For the reasons stated, the cause will be reversed, and remanded to the district court, with instructions to proceed in accordance with the views herein expressed; and it is so ordered.

HANNA, C. J., and PARKER, J., concur.

---

[No. 2211, Aug. 13, 1918.]
[Rehearing Denied Sept. 6, 1918.]
STATE v. SEDILLO.

SYLLABUS BY THE COURT.

1. The method and extent of cross-examination depends largely upon the discretion of the trial judge. Held, that court did not abuse its discretion in permitting counsel for the state to ask the accused, on cross-examination, how he

accounted for the brains of deceased and lead from a bullet appearing upon certain rocks found near the body of deceased.                                                                P. 553

2.   The general reputation of the deceased for stated traits cannot be proved by a witness not knowing the general reputation of deceased therefor, but who bases his opinion upon personal knowledge.                         '         P. 553

3.   Code 1915, § 1708, construed, and held that the word "travelers," as used therein, does not include one who habitually journeys from his home in a city to his ranch, less than 10 miles distant from his home.   Held, further, that accused had reached his objective prior to the occurrence of the homicide and therefore he was not a traveler, within the meaning of the statute.                         P. 555

4.   A requested instruction based upon facts not in evidence is properly refused.                                  P. 557

5.   A requested instruction containing the law as to the legal effect of shooting into the body of a corpse is properly refused where the court instructed the jury that, before they could convict accused of murder in the second degree, they must believe that he inflicted three mortal wounds upon the person of the deceased, from which wounds the deceased then and there died, the instruction given covering the law of the requested instruction, in different language.                                                            P. 558

6.   Objections to alleged improper argument of counsel must specify the ground thereof, or the same will not be considered on appeal.                                      P. 559

Appeal from District Court, Socorro County; Mechem, Judge.

Jacobo Sedillo was convicted of murder in the second degree and appeals.   Affirmed.

A. A. SEDILLO, of Albuquerque, and NICHOLAS & NICHOLAS, of Socorro, for appellant.

MILTON J. HELMICK, Asst. Atty. Gen., for the State.

## OPINION OF THE COURT.

HANNA, C. J.  This is an appeal from the district court of the county of Socorro, by Jacobo Sedillo, from a conviction for murder in the second degree.

The appellant lived in the city of Socorro.  He was engaged in the sheep and cattle business, and for that purpose utilized two ranches, one distant about 9½ miles from said city, the other situate between said last-mentioned ranch and said city.  The appellant made daily journeys to and from said ranches, at which times he customarily carried with him a rifle.  The deceased, Antonio Gianera was also engaged in the live stock business and ran his sheep in close proximity to the said ranches of appellant.  Friction had arisen between the appellant and the deceased with respect to the grazing of the deceased's sheep.  On April 9, 1917, the appellant left his home in Socorro and journeyed to his ranches.  In approaching the ranch farthest situated from said city the appellant observed a herd of sheep, in charge of a herder, grazing upon lands utilized by him and reserved for lambing purposes.  The herd proved to be the property of the deceased.  Appellant requested the herder to remove said sheep from said reserved lands, with which request the said herder complied.  The appellant then proceeded to the headquarters of said ranch. Shortly after he arrived there he observed that the sheep referred to were being driven back to his reserved lands. The appellant thereupon declared, in effect, that he couldn't "stand for this any more," armed himself with a rifle, and proceeded on foot to the place where said sheep were being driven.  At that time the deceased and his herder were in charge of said sheep.  The testimony of the herder was to the effect that when the deceased observed the appellant approaching him he rode towards him in a fast walk in order to ascend a hill or bank.  According to other testimony given by men employed by the appellant, who testified they observed this tragedy,

the deceased rode rapidly towards the appellant. At all events, when the said patries came to within about 25 feet of each other the appellant began to discharge his rifle at and towards the deceased, firing three shots at him in rapid succession. After the discharge of the first shot, the horse upon which the deceased was mounted turned away from the appellant, but the appellant continued to fire two additional shots. Three shots took effect in the body of the deceased. After the second shot was fired the deceased fell from his mount, and thereafter the appellant fired the third shot. The testimony of a physician who examined the body on the field would indicate that the third shot was fired after the deceased had fallen to the ground.

The appellant was in possession of the ranch to which he journeyed and the section of land upon which the shooting occurred under some right granted by his relatives, who possessed said property by virtue of a homestead entry.

The appellant defended upon the ground of self-defense, contending that appellant rode toward him at a rapid pace, at which time he called the appellant vile names, threatened him with personal violence, and made movements reasonably tending to create in the mind of appellant the belief that the deceased was about to extract a gun from his hip pocket. No weapon was found upon the person of the deceased. A witness for appellant testfiied that a brother of the deceased, shortly after the killing, extracted something from the pocket of the deceased, but just what it was the witness did not know.

It was developed in the case made by the state that blood stains and spattered brains were found upon rocks near the place where the head of the deceased was resting, at the scene of the homicide, and one rock was discovered near the head upon which appeared some lead from a bullet mark, made by a bullet striking the rock. This subject was not touched upon in the examination in chief of the appellant, he testifying that he immediately left the scene of the homicide, after the killing, and gave

State v. Sedillo, 24 N. M. 549.

himself up to the custody of the officers of the law. On cross-examination appears the following:

"Q. And you didn't fire the last shot while he was lying on the ground, did you? A. I don't know. Q. How do you account for the brains of the deceased on those rocks there? Mr. Sedillo: Objected to. I don't think that is a fair question—how do you account for it? The Court: Overruled. Mr. Sedillo: Exception. A. Absolutely nothing. Q. How do you account for that bullet shot on that rock which was exhibited here yesterday? Mr. Sedillo: Same objection. The Court: Same ruling. Mr. Sedillo: Exception. A. Absolutely nothing."

[1] Objection now is made by appellant's counsel on the theory that such questions call for opinion evidence; that the questions were immaterial, and that they tended to elicit testimony highly prejudicial to the appellant. The only objection of record in the trial court was based upon the fact that such questions were unfair. In what respect they were unfair is left to speculation. The other grounds, viz. prejudice and immateriality, we shall not consider, as the proposition in that form was not raised in the trial court. We are satisfied that the court did not err in permitting the question to stand in the face of the objection. The answer given, as shown by the record, is not intelligible, which may be due to the misinterpretation of the interpreter, if one were used. The extent to which cross-examination may be permitted is ordinarily for the determination of the trial court in the exercise of sound discretion. From the necessity of the case the method and extent of the cross-examination must depend very largely upon the discretion of the trial judge. State v. Carter, 21 N. M. 166, 170, 153 Pac. 271. The court did not abuse its discretion in permitting the questions to stand.

[2] A witness for the appellant testified that the general reputation of the deceased in the community, for violence, turbulence, and quarrelsomeness, was bad. On cross-examination it was developed that the witness knew nothing whatever about the reputation, as such,

of the deceased, but based his opinion on his own personal knowledge of the deceased. It appeared that the witness had some difficulty with the deceased, and that this was the dominating influence upon his mind and the real cause for the expression of his opinion. The court thereupon eliminated such testimony from the consideration of the jury, and this is asserted to constitute error.

The territorial Supreme Court in Territory v. Lobato, 17 N. M. 666, 134 Pac. 222, L. R. A. 1917A, 1226, held that general reputation of the deceased for violence, etc., was admissible, but did not determine the manner or mode of such proof, except to deny the right of one to show specific acts to exhibit the same. In the note, at page 661, to the case of People v. Van Gaasbeck, reported in 22 L. R. A. (N. S.) 650, will be found numerous cases discussing this proposition. The author of the note says:

"The question of proving character—as for peace and quietness or for violence—of the deceased or of the accused has been somewhat confused by the failure of the courts to distinguish between proof of character and proof of reputation. Where it is construed to be synonymous with reputation, the general rule applies; and evidence of such character or reputation can be proved only by evidence of general reputation in the community, and not from the personal knowledge of the witness."

In Underhill on Crim. Evid. § 325, it is said:

"The majority of the cases reject evidence to prove the actual moral character or disposition of the deceased, i. e., his inclination to do right, but admit his reputation in evidence, that is, the general knowledge or opinion of his character and disposition which prevails among his neighbors and acquaintances."

"The inquiry as to character must be limited to the general reputation of the person in the community of his residence or where he is best known, and the witness must speak from his knowledge of this general character and not from his own individual opinion."

—is what the court said in Brownlee v. State, 13 Tex. App. 255, and in effect is the same as the courts of

numerous other states have held, as shown in the L. R.
A. note, supra. See, also, Wharton on Homicide (3d
Ed.) § 271; 8 R. C. L. ''Criminal Law,'' § 205. It was
not error to reject the testimony of which complaint is
made.

The court advised counsel to proceed anew to qualify
the witness to testify as to the general reputation of the
deceased for said traits, but counsel did not take advant-
age of such offer, and consequently is in no position to
assert here with any success the proposition that the
court refused to permit counsel to further interrogate
the witness for the purpose of qualifying him.

[3] The appellant requested the court to give to the
jury the following instruction, which was refused:

"The jury are instructed that under the laws of this
state persons traveling may carry arms for their protec-
tion and while actually prosecuting their journey, and may
pass through settlements on their road without disarming,
and in this case you are instructed that the defendant,
Jacobo Sedillo, under the laws of this state, had a right to
carry. his rifle in traveling from Socorro to his ranch or
place occupied and claimed by him in this cause, if he
did so carry it."

Appellant's counsel admit that the law as applied in
many of the states would not permit of the conclusion
that the appellant was a ''traveler,'' but assert that he
was such a person within the ordinary meaning of the
statute.

We are unable to see the materiality of the instruc-
tion. In the res gestae of the case it was developed, it
is true, that appellant did carry a weapon on his jour-
ney from Socorro to his ranch, but the act for which he
was indicted was committed after he had reached his
objective, at which time his journey was at an end. See
Eslava v. State, 49 Ala. 355. We not only think that
it was wholly immaterial in the case whether he was a
''traveler'' or not, and therefore had the right to remain
armed, but that the instruction was properly refused
because he was not a traveler. Our statute, § 1708,

Code 1915, permits "travelers" to carry arms for their own protection "while actually prosecuting their journey." In 40 Cyc. 858, it is said:

"Statutes prohibiting the carrying of deadly weapons frequently except travelers or persons on a journey. As these exceptions are designed to allow persons to protect themselves, when among strangers, against dangers which are not supposed to exist among friends and neighbors, a person is a traveler, or is on a journey, within their meaning, when he takes a trip outside the ordinary routine of his business, to a point far enough distant from his home to carry him beyond the circle of his neighbors."

Various definitions of the word "traveler" will be found in the books, but all agree that the mere passage of one from one place to another, without certain attendant circumstances, does not constitute one a traveler within the exception to the statutory prohibition against carrying deadly weapons. In State v. Smith, 157 Ind. 241, 61 N. E. 566, 87 Am. St. Rep. 205, the court said:

"The evil sought to be remedied by said section was the insecurity of life caused by the pernicious habit of carrying concealed weapons and the consequent demoralization of society. The word 'traveler,' when used in a broad sense, designates one who travels in any way, distance not being material. It is clear that the Legislature did not use the word in this sense, for such signification would destroy the very purpose for which the section was enacted, by licensing, rather than suppressing, the practice of carrying concealed weapons. It is manifest, therefore, that the word was employed in a more limited sense, and was intended to designate a person traveling at least such a distance as takes him among strangers, with whose habits, conduct, and character he is not acquainted, where unknown dangers may exist, from which there may be a necessity to protect himself by preparing for a defense against an attack. It follows that, to come within the exception of said section, the travel must be without the ordinary habits, business, or duties of the person, and at least to such distance from his home as takes him beyond the circle of his general acquaintances, among strangers with whose habits, conduct, and character he is not acquainted."

The foregoing definition is about as accurate as the subject requires, but, in our opinion, should not be taken

literally as the yardstick for determining when one is a "traveler" under all circumstances. In Bain v. State, 38 Tex. Cr. R. 635, 44 S. W. 518, the court held that the word as used in the deadly weapon statute did not mean one who travels in any way, one who makes a journey or goes from place to place, but said that, as the legislature had not defined the word, it was difficult to determine who was a traveler. In Wilson v. State, 68 Ala. 41, the court held that it was impossible to lay down any "unbending rule or determine the distance which will characterize the act as a journey or the actor as a traveler," much depending upon the circumstances of each particular case. The court also said, in effect, that the circumstances of the case should be weighed by the jury in determining whether the accused was traveling, except in those cases where it was plain that the accused was or was not a traveler or engaged in traveling, in which events the court might instruct the jury that the accused was or was not a traveler.

The appellant in the case at bar was not a "traveler" as defined in the case of Smith. v. State, supra, when journeying from his home to his ranches. Having reached his destination, viz. his ranch, his journey, at all events then ended, and clearly his passage from his headquarters on said ranch to the place where the homicide occurred, being on the premises of said ranch, would not make him a "traveler" within the meaning of the statute.

[4] The appellant submitted to the trial court an instruction advising the jury as follows:

"The jury are instructed that under the laws of this state that persons have a right to carry deadly weapons on their landed estate if intoxicating liquors are not sold on said premises. And in this case, you are instructed that the defendant, * * * under the laws of this state, had a right to carry his rifle at his ranch or place occupied and claimed by him as his landed estate in this cause, if he did so carry it."

The court refused to give said instruction. The instruction requested is based upon the provisions of section 1701, Code 1915, which provides:

"Any person who shall carry a deadly weapon, either concealed or otherwise, in or about the settlements of this state, except it be in his or her residence or on his or her landed estate, if intoxicating liquors are not sold' on any such premises," etc. ·

That part of the requested instruction which sets forth the substance of the statute appears unobjectionable as a proposition of law; but the latter part of the instruction, in which the law of the statute was attempted to be applied to the case at bar, is erroneous, in that it is predicated upon the assumption that intoxicating liquors were not sold on the "landed estate" of appellant, whereas the record of the evidence is silent as to that fact. The instruction was therefore properly refused because erroneous and not based on the evidence.

[5] The court refused to give appellant's instruction numbered 12. It was to the general effect that if the jury believed from the evidence that the shot which the appellant fired into the head of the deceased was fired by appellant while the deceased was lying on the ground and after he was dead, that the jury could not look to such act of the appellant for the purpose of imputing any offense to him, "for he could not in this case be convicted of any offense on account of having fired a shot into a dead body." It was not incumbent on the court to give that instruction. The instruction attempted to segregate the two shots fired into the body of the deceased from the one which took effect in his head. From an inspection of certain evidence adduced on the part of the state the supposition seems apparent that the state contended that the first shot fired by appellant entered the abdomen, the second the back, and the last one the head, and that the last shot was fired when the deceased was prone on the ground in a lifeless condition. The testimony of the appellant indicated

State v. Sedillo, 24 N. M. 549.

that when he fired the third and last shot the body of
the deceased was "jumping up and down," but he did
not know in what order the shots took effect in the body
of the deceased or that they took any effect at all. We
see no occasion for the giving of the instruction requested
by appellant. The court instructed the jury that, in
order to convict the appellant of murder in the second
degree, they must believe from the evidence beyond a
reasonable doubt that appellant did shoot off and dis-
charge a rifle at and toward the deceased, thereby in-
flicting "in and upon the head, and in and upon the
body of him, the said Antonio Gianera, three mortal
wounds, of which said mortal wounds the said Antonio
Gianera then and there died." Under that instruction
manifestly the jury was not entitled to convict the ap-
pellant, unless they believed that all three shots fired by
the appellant inflicted mortal wounds upon the body
of the deceased, and that from all three mortal wounds
the deceased died. This instruction was perhaps more
favorable to the accused than that to which he was en-
titled, but it manifestly gave the jury to understand
that they could not convict the appellant if they be-
lieved that the shot in the head was received after the
life of the deceased had become extinct. The proposi-
tion for which the appellant contends was therefore cov-
ered by the court, but in different language, and, the in-
struction of the court fully protecting the defendant in
this regard, the court did not err in refusing said in-
struction.

[6] The last proposition urged by the counsel for
appellant concerns alleged improper argument of the
district attorney. The bill of exceptions indicates
that during the opening argument of the district attor-
ney he stated that when the appellant reached his cabin
and entered the presence of his employes, immediately
after the homicide had occurred, he asked for and re-
ceived a cup of coffee, but did not then state to his men
that he had been assaulted by the deceased with a pistol
or that he took the life of the deceased in self-defense.

The bill of exceptions on this proposition is as follows:

"The district attorney, in the course of his opening argument, in summing up the case to the jury on behalf of the state, stated, in substance and effect, that the defendant * * * had failed to testify and to show by evidence of his witnesses that at the time when he returned from the place of the homicide to the cabin or well, where Juan Sanchez (and others) were, immediately after the shooting took place, and while the defendant had such matter fresh in his mind, that he failed to testify and to show that he had stated to said parties that the deceased had attacked him viciously with a pistol, but that instead that the defense had shown, or it was shown by the evidence in the case, that the defendant had taken a cup of coffee, and that the defendant had utterly failed to show that he had stated to said parties that the defendant in doing the shooting had acted in self-defense, and that the deceased had attacked him with a pistol, and that this was a fact or point in the case which the jury would have to consider, and that if the deceased had been armed and had attacked the defendant with a pistol the way in which the defendant testified, that the defendant would not have failed to have shown by his evidence and the evidence of the other parties named, that he had told such fact to the said parties at the time when he returned from the place of the homicide to where said parties were at the cabin or well immediately after the shooting, and that therefore, it was clear, or it was to be deduced from the failure of the defense to adduce such testimony when it was in their power to do so, that the story of defendant as to that point, which was the most vital point in the case, was false and was a made up story in this case. The defendant, by his attorneys, objected to this line of argument, and requested the court to instruct the jury to disregard it. The court overruled this objection and refused this request and directed the district attorney to proceed with his argument; to which ruling of the court the defendant excepted at the time."

The appellant contends here that the argument of the district attorney was not to the effect that the evidence showed that the appellant failed to make such a statement, but that the defendant had failed to prove that he had made such a statement. Counsel for appellant assert that this constitutes error because it transcends the bounds of legitimate argument and goes beyond the rule laid down in State v. Graves, 21 N. M. 556, 157 Pac. 160. The rule of that case is:

State v. Sedillo, 24 N. M. 549.

"Counsel, in addressing a jury, when arguing within the bounds of admitted or disputed facts, should enjoy the greatest latitude consistent with decorum and a reasonable ambition to win success by honorable means. * * * The trial court enjoys peculiar facilities for observing the propriety or impropriety of forensic arguments, and its discretion, when invoked, should rarely be interferred with, in the absence of obvious or probable injury."

Authority is cited by appellant to the general effect that the error was in commenting on evidence that might have been but was not given by witnesses, it being the function of attorneys to comment on the evidence which has been given, not upon that which might have been given. The state contends that the comment was not upon any independent and collateral fact outside of the record, but was upon the acts and omissions of the defendant which formed a part of the res gestae. We seriously doubt that any act of the appellant occurring at the cabin after the commission of the homicide constituted a part of the res gestae of the case, or that he could properly testify as to any statement he may have made to his employes as to the cause of the homicide. The proposition submitted involves some difficulty in order to properly solve it on its merits. The defense was self-defense, and it would appear but natural to one who honestly killed another in self-defense to make known that defense to his friends whom he encountered immediately after the homicide occurred, and that his failure to do so involves the inference that he did not take the life in self-defense. Manifestly this disparages the plea of self-defense. But we are disinclined to dispose of the question on its merits. The reason for this is that we are not advised by the record of the reason for the objection to this argument—whether it was because the argument was based upon facts outside of the record or otherwise, the bill of exceptions not giving us any light on this proposition. Perchance the reason for the objection was foreign to the reason now asserted here why the action of the trial court was erroneous. It is a rule in this jurisdiction that objection must be made to

improper argument and a request made to take it from the consideration of the jury, but it has not heretofore, we believe, been held that the ground of the objection must be specified. We hold that the ground of the objection to alleged improper argument to the jury must be specified and made known to the court, so that the court may intelligently rule thereon, and that when this is not done the proposition is not properly reviewable here on appeal. This is consistent with the rule so often announced by this court, that objections to evidence and the action of the trial court in other instances must be specifically made known, so that a complete determination of the proposition of law may be first had in the trial court. We apprehend that this imposes no extraordinary burden on counsel, and better assists the trial court to administer justice in the premises. If this were not the correct rule then ofttimes perchance reversals here would be effected upon propositions of law neither submitted nor determined by the trial court—an anomalous situation, to say the least.

For the reasons stated, the judgment of the trial court will be affirmed, and it is so ordered.

PARKER and ROBERTS, J.J., concur.

---

[No. 2110, April 25, 1918.]
[Rehearing Denied Sept. 6, 1918.]
GOMEZ v. ULIBARRI (DE GOMEZ, Intervener).