## ALEX MAXEY V. THE STATE.

### No. 10192.  Delivered May 17, 1926.

### Rehearing denied June 25, 1926.

**1.—Murder—Bill of Exception—Controlled by Qualifications.**

Where appellant, on a trial for murder, complains by bill of exception that hostility was manifested toward appellant by the public during his trial and the bill of exception is qualified to the effect that decorum and order prevailed during the trial, this qualification being accepted by appellant, no error is presented.

**2.—Same—Argument of Counsel—New Trial—Properly Refused.**

Where appellant, for the first time, complains of the argument of counsel in his motion for a new trial, and it is not claimed that exception was taken to the argument at the time it was made, the complaint comes too late, and especially so when appellant's bill is qualified by the court with the statement that he heard no such remarks and that proof, heard upon the motion for new trial, excluded the theory that remarks of the nature mentioned were made. .

**3.—Same—New Trial—Properly Refused.**

Where appellant complains in a bill of exception of the overruling of his motion for a new trial on the ground of the receipt of evidence that appellant assaulted and robbed Earl Spikes at the same time that he killed and robbed the deceased, being a part of the res gestae, no error is shown.  See Underhill on Crim. Ev., 3rd Ed., Sec. 501, and cases cited in opinion.

**4.—Same—New Trial—Practice in Trial Court.**

Appellant, in numerous bills of exception, complains of the action of the court in overruling his motion for a new trial, on account of the admission of testimony on the trial, which, if objected to by him, such ojections were not preserved by bills of exception taken when the testimony was admitted.  To authorize a review of the evidence, a bill of exception is essential.  See Ross v. State, 40 Tex. Crim. Rep. 352, and other cases cited.

**5.—Same—Continued.**

"If either party, during the progress of a cause, is dissatisfied with any ruling, opinion or other action of the court, he may except thereto at the time said ruling is made, or announced, or such action taken, and at his request, time shall be given to embody such exception in a written bill."  Art. 2237, Rev. Civil Stats. of 1925.

**6.—Same—Continued.**

Where matters of fact, such as misconduct of the jury, are set up in the motion for a new trial, it is essential to their consideration that the truth of the averments be authenticated by proper bill of exceptions or by statement of facts filed during the term.  See Marshall v. State, 5 Tex. Crim. App. 273, and other cases cited.

7.—Same—Evidence—Held Sufficient.

The death penalty being inflicted, we have most carefully examined the record, both as to the sufficiency of the evidence and for possible errors committed on the trial. It is conclusively shown that appellant killed deceased by shooting him in the back of the head, and then rifled his pockets and took a considerable sum of money from his dead body. Within the limits of the law, to the jury was committed the discretion to fix the punishment. We fail to find any errors in the trial, or any matters in the record indicating that the verdict reflected other than the unbiased judgment of the jury, and the cause must be affirmed.

### ON REHEARING.

8.—Same—Special Judge—Selected by Agreement—No Error Shown.

Where counsel for appellant and the state agreed in writing that the Hon. R. T. Brown, Judge of the District Court of Shelby County, was disqualified, and that Spottswood H. Sanders, as special judge, should try the case, we are unable to find sanction for the appellant's contention that the judgment is void because not tried before the regular judge of the court Distinguishing Pickett v. Michael, 187 S. W. 427, and Dunn v. Home Natl. Bank, 181 S. W. 699.

9.—Same—Continued.

Our Constitution, Art. 5, Sec. 11, provides: "When a judge of the district court is disqualified by any of the causes above stated the parties may by consent appoint a proper person to try said cause; or upon their failure to do so, a competent person may be appointed to try the same in the county where it is pending, in such manner as may be prescribed by law." The motion for rehearing is overruled. See Patterson v. State, 87 Tex. Crim. Rep. 95.

Appeal from the District Court of Shelby County. Tried below before the Hon. Spottswood H. Sanders, Special Judge.

Appeal from a conviction of murder, penalty assessed at death.

The opinion states the case.

*D. R. Taylor* of Center, for appellant.

*Sam D. Stinson*, State's Attorney, and *Robt. M. Lyles*, Assistant State's Attorney, for the State.

MORROW, PRESIDING JUDGE.—The offense is murder, punishment fixed at death.

Appellant shot and killed Leroy McCain.

According to the state's witness, Berl Spikes, he, Chester King, Leroy McCain and the appellant were walking in the woods. Deceased and the appellant were walking side by side and were in front of King and Spikes. The witness Spikes

observed that the appellant fell behind Spikes. The witness observed that the appellant fell behind McCain. He then saw the appellant shoot McCain, who fell at once. Immediately after shooting McCain, appellant fired five shots at Spikes, three of which took effect. After shooting and wounding Spikes the appellant attacked him with a knife. Spikes defended himself with a pole. The deceased had $100.00 in his possession; Spikes had $80.00. Appellant took the money from each. The shooting of McCain was at close range.

King gave testimony in substance like that of Spikes. After the shooting, King and the appellant rode to town in the same car. On the way, appellant told him that the pistol with which the shooting was done had been left with Berl Spikes. Before going to the place of the tragedy, the parties (who were negroes) had been gambling at craps. McCain had won and the appellant had lost.

Smith testified that subsequent to the homicide he was asked by the appellant to refrain from stating that he had had a pistol on the previous night. Witnesses who reached the scene after the homicide described the surroundings. The deceased had been shot in the back of the head. A pistol and other articles were found upon the scene; also appellant's hat and a jumper which Spikes testified had been pulled off of him while he was fleeing from the appellant, and in the pocket of which jumper Spikes had his money. The hip pockets of the deceased's trousers had been pulled wrong side out and emptied. A pocket-book was nearby. In one of the other pockets of his trousers was found two dollars in silver.

The witness Yarborough testified that sometime before the homicide there was a dispute over a game at which time both appellant and deceased and several others were present. Appellant claimed that he had not gotten a fair deal. Yarborough said to him:

"Me and Berl and Leroy are going to catch you and whip you."

Another witness told the appellant that they were going to make him give back the two dollars that he had won with crooked dice. Two other witnesses testified that they had told the appellant that Spikes and McCain had accused him of turning them in in a crap game and that they were going to whip him.

There was some evidence that the reputation of the deceased as a peaceable man was bad.

In bill of exceptions No. 1, there is a statement to the effect that the public sentiment was adverse to the appellant and that this was manifest during the trial and created a hostile atmosphere which affected the jury to the prejudice of the appellant. The bill is qualified to the effect that decorum and order prevailed during the trial, the only exception being that when one of the negroes testified to his flight some laughter was provoked, which was suppressed by prompt reprimand from the court.

From bill No. 2 we learn that appellant, in his motion for new trial, claimed that the state's attorney, in his argument, had made some reference to the abuse of the pardoning power. It is not claimed that exception was taken to the argument at the time but that it was attempted to first present the matter in the motion for new trial. The court, in qualifying the bill, stated that he heard no such remarks and that the proof heard upon the motion for new trial excluded the theory that remarks of the nature mentioned were made.

A like bill brings forward a complaint made in the motion for new trial of the alleged fact that the state's attorney, in his argument of the facts, went beyond the record made by the witnesses upon the trial. The court in qualifying the bill negatives the correctness of this averment.

In bill No. 4 is found a paragraph of the motion for new trial asserting that when the jury retired they sent word to the court to wait for them a few minutes as they believed the report would soon be made. It seems from the averment that they did not report for some thirty-six hours or more. The bill, as qualified, shows that after the argument, the court asked the jury if they wished to retire to the anteroom to consider their verdict and that shortly after retiring they notified the court that they desired to retire for the night. This they did and many hours later brought in the verdict.

In bill No. 5 complaint is made of the overruling of the motion for new trial wherein in one paragraph complaint is made of the receipt of evidence claimed by the appellant to be irrevelant and prejudicial. The evidence to which the motion refers, if we comprehend it, is that wherein the appellant was shown to have assaulted and robbed Berl Spikes.

Bill of exceptions No. 7, which consists of several pages, we may not fully comprehend. It seems, however, that in the motion for new trial appellant complained of the fact that the testimony of the witness King given upon his direct exami-

nation was not in harmony with his testimony given upon the preliminary trial which was drawn out upon the present trial in his cross-examination. The point seems to be made that due to this alleged conflict, the guilt of the accused was not established beyond a reasonable doubt. In explanation of the bill, the court refers to the statement of facts in which the testimony of King is given in full.

Bill No. 9 complains of the overruling of a paragraph in the motion for new trial which challenges the sufficiency of the evidence upon the ground that the threats to whip the appellant, which the evidence reflected, were ignored by the jury.

Bill No. 10 is a complaint of the overruling of a paragraph in the motion for new trial complaining of the receipt in evidence of testimony to the effect that the deceased McCain and Berl Spikes had money upon their persons.

Bill No. 11 complains of the overruling of a paragraph in the motion for new trial in which complaint is made of the receipt in evidence of circumstances going to show that the deceased had been robbed.

It is to be noted that the bills of exceptions do not relate to exceptions taken during the trial but refer to matters of which complaint was first made upon the motion for new trial. Were it not for the fact that the extreme penalty has been assessed, we would not feel called upon to take note of these matters. The law contemplates and expressly declares:

"If either party during the progress of a cause is dissatisfied with any ruling, opinion, or other action of the court, he may except thereto at the time the said ruling is made, or announced or such action taken, and at his request time shall be given to embody such exception in a written bill." (Art. 2237, Rev. Civil Stat., 1925.)

To authorize a review of the action of the trial court in the receipt of the evidence a bill of exceptions is essential. See Ross v. State, 40 Tex. Crim. Rep. 352, and other cases collated in Branch's Ann. Tex. P. C., Sec. 210. The same is true with reference to the complaint of improper argument. Spencer v. State, 34 Tex. Crim. Rep. 65 and other authorities collated by Mr. Branch in his Ann. Tex. P. C., Sec. 361. Complaint of improper argument in the motion for new trial comes too late. Rucker v. State, 7 Tex. Crim. App. 549; Watson v. State, 28 Tex. Crim. App. 41; Boyce v. State, 62 Tex. Crim. Rep. 376. Where, under the law, a bill of exceptions is required, the motion for new trial is not an adequate sub-

stitute. See Howard v. State, 143 S. W. 178, and other cases collated in Vernon's Tex. Crim. Stat., Vol. 2, p. 536, note 20; also Watson v. State, 87 Tex. Crim. Rep. 189; Wilson v. State, 87 Tex. Crim. Rep. 538.

Where matters of fact, such as misconduct of the jury, are set up in the motion for new trial, it is essential to their consideration that the truth of the averments be authenticated by proper bill of exceptions or by statement of facts filed during the term. See Marshall v. State, 5 Tex. Crim. App. 273; Bragg v. State, 73 Tex. Crim. Rep. 340; Reyes v. State, 81 Tex. Crim. Rep. 588; Dodd v. State, 83 Tex. Crim. Rep. 160; and other cases collated in Vernon's Tex. Crim. Stat., Vol. 2, p. 538, note 19; also Vernon's Tex. Civ. and Crim. Stat., 1922 Supp., p. 2510, note 19.

In view of the extreme penalty, we have carefully read the record and each of the so-called bills of exceptions. Even if properly before us, the explanation attached to each of the bills which, as presented in the present record is presumed to be correct, precludes error. See Branch's Ann. Tex. P. C., Sec. 215, and authorities collated; also Hardy v. State, 31 Tex. Crim. Rep. 289. Even if considered as a bill of exceptions in proper form, the complaint of the receipt of evidence showing that the deceased was robbed and that his companion was shot and robbed by the appellant is not shown to have erroneous. Upon the subject, we quote from Underhill's Crim. Ev., 3rd Ed., Sec. 501, as follows:

"Crimes leading up to or connected with the homicide, so that they form parts of one transaction, may be proved as part of the res gestae to illustrate the conduct and disposition of the accused about the time of the homicide. It may be shown that in the same affray, or immediately before, or thereafter, the accused killed, or attempted to kill, another person than the one for whose homicide he is on trial. Again, if the evidence shows that two or more persons were killed at or about the same time and place, and by the same weapon, so that the several crimes form one transaction, evidence of the condition of any one of the bodies, showing the cause or means of death, as ascertained by an autopsy, or otherwise, is admissible against one on trial for the homicide of any one of the deceased persons. So it may be shown after the killing of the deceased the accused immediately shot the brother of the deceased."

In support of the text are found many cases from other jurisdictions and some from our own. See Wilkerson v. State, 31

Tex. Crim. Rep. 86; Morris v. State, 30 Tex. Crim. App. 95; Crews v. State, 34 Tex. Crim. Rep. 533; Cortez v. State, 47 Tex. Crim. Rep. 10; Millner v. state, 72 Tex. Crim. Rep. 45; Stewart v. State, 76 Tex. Crim. Rep. 442; Dudley v. State, 40 Tex. Crim. Rep. 31.

From the third subdivision of the syllabus in the Wilkerson case, supra, we take the following quotation:

"Where defendant's bill of exceptions showed that the state was permitted to prove that immediately after killing his wife, and within forty steps of her dead body, he also shot and killed another party, held, that while the bill of exceptions was too indefinite and defective to authorize its consideration by this court, still the evidence was clearly admissible and properly admitted as res gestae."

This case was approved on similar facts in the case of Jenkins v. State, 59 Tex. Crim. Rep. 478. See also Campos v. State, 50 Tex. Crim. Rep. 289.

From subdivisions 2 and 4 of the syllabus in the Campos case, supra, we quote:

"Where upon trial for murder, the evidence showed that at the same time of the homicide, the sister of deceased was killed by the defendant, there was no error to show the circumstances attending the killing of both, and the wounds that were inflicted."

"Upon trial for murder, where the evidence showed that the killing of deceased and her sister at the same time by the defendant was one transaction, the confession of defendant relating to the killing of both, after being properly warned, was admissible to show the animus, motive and intent of defendant in killing the deceased."

A like ruling was made in Crews v. State, supra. See also 62 L. R. A., p. 310, note.

Evidence that the deceased possessed a sum of money was, under the circumstances, we think, clearly relevant. He and the appellant had been gambling, and deceased was the winner. The circumstances were such as to show knowledge on the part of the appellant of a considerable sum of money by the deceased. Appellant shot the deceased from behind and rifled his pockets. See Lovel v. State, 92 Tex. Crim. Rep. 616.

The evidence seems quite sufficient to sustain the contention of the state and support the finding of the jury that the appellant murdered the deceased and that his purpose was robbery. Within the limits of the law, to the jury was committed the discretion to fix the punishment. We have failed to perceive any

matters in the record indicating that the verdict reflected other than the unbiased judgment of the jury.

We are not unmindful of the consequences of the affirmance of the judgment, but with the record before us, we have no discretion other than to uphold the conviction.

The judgment is affirmed.

*Affirmed.*

ON MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—A suggestion is made that fundamental error is apparent upon the record in the matter of the selection of the special judge. We find in the record a written agreement bearing the signature of the District Attorney and the attorney for the appellant in which there is the following recital:

"Whereas, the Honorable R. T. Brown, presiding judge of said above court, being absent and disqualified from sitting in and trying the above entitled and numbered cause, we, the undersigned, counsel for said state and defendant, parties to this case, do hereby select and agree upon S. H. Sanders, an attorney of this court, to preside as special judge in the trial of said cause."

In support of the appellant's contention that the trial by the special judge was void, we are referred to the cases of Pickett v. Michael, 187 S. W. 427; and Dunn v. Home National Bank, 181 S. W. 699. We understand from the reports of the cases mentioned that the agreement to select the special judge was not based upon the disqualification of the regular judge. In the case of Dunn v. Home National Bank, supra, it was specifically stated that "the record here shows no disqualification of the regular judge." The same fact also appears in the other case.

In the Constitution, Article 5, Section 11, it is stated:

"When a judge of the District Court is disqualified by any of the causes above stated, the parties may, by consent, appoint a proper person to try said case; or upon their failing to do so, a competent person may be appointed to try the same in the county where it is pending, in such manner as may be prescribed by law."

A somewhat extended discussion of the subject will be found in Patterson's case, 87 Tex. Crim. Rep. 95, wherein the selection of a special judge by agreement was upheld.

In view of the agreement in the present case and the express recital therein that the Honorable R. T. Brown was

*"disqualified"* and there being nothing in the record which indicates the contrary, we are unable to find sanction for the appellant's contention that the judgment is void.

The motion for rehearing is overruled.

*Overruled.*