STATE v. JOE HARDEE AND EVERETT HARDEE.

(Filed 17 November, 1926.)

**1. Homicide—Instructions—Evidence—Less Degree of Crime — Indictment.**

Upon the trial under an indictment for murder it is the duty of the trial judge, under supporting evidence, to declare and explain the law upon the less offense of manslaughter, with the burden of proof on defendant, and a statement of the contentions of the parties, etc., with a mere announcement of the principle is insufficient. C. S., 564, 4639.

**2. Same—Manslaughter—Evidence.**

Where the evidence tends to show. that the prisoner and deceased, each armed with deadly weapons, entered willingly into the fight which caused the latter's death, it is sufficient to sustain a verdict of manslaughter, under proper instructions of the law from the court.

**3. Same—Instructions.**

Where the instructions of the court to the jury of the law arising under the evidence, upon the principles of murder and manslaughter, construed as a whole, and not disjointedly, are correct and not misleading, prejudicial error will not be held on appeal.

**4. Constitutional Law—Homicide—Instructions—Presence of Prisoner— Appeal and Error.**

Where the judge has inadvertently charged upon the trial for a homicide that the State must prove its case by the greater weight of the evidence, and immediately after the jury has withdrawn for its deliberation, defendant's counsel has called this error to the court's attention, and informed the court that he had unmistakably corrected his error in other portions of the charge, and that it was useless to recall the jury, and thereupon the judge went to the jury room and corrected his error, standing in the open doorway of ,the jury room just beyond that of the unlocked courtroom door, where the defendants and their attorneys were sitting, having declined to accompany the judge: *Held*, not reversible error in violation of the constitutional right of the defendant to be present.

APPEAL by defendants from *Daniels,. J.,* at July Term, 1926, of DURHAM.

The defendants were indicted for the murder of one Robert Steele and were convicted of murder in the second degree. From the judgment pronounced they appealed, assigning error.

There is evidence tending to show the following circumstances: About noon on Sunday, 23 May, 1926, Clark, Moore, Andrews, and the defendants went from Carrboro to the home of the deceased in the city of Durham; there Everett Hardee bought two bottles of liquor from the deceased and soon afterwards all were more or less under the influence of drink. Mrs. Steele, wife of the deceased, was across the street at Victoria Brown's. Returning home, "she went into the house after these five men." She found them in the kitchen around a table on which there was a half pint of whiskey. Moore and Clark were the first to leave. She knocked a glass from her husband's hand and Andrews cursed and struck her. She ran Andrews into the street, but he went back to the house and tried to get in at a window. She then struck at Andrews with a baseball bat and he moved on. She, her husband and the defendants were at the front door. She started for a policeman, and Everett knocked her down in the street and took the bat from her. The

deceased caught Everett around the neck; Everett "slung him loose, hit his face with the bat, knocked him down, stepped across him and stood over him and hit him in the head like he was mauling rails." Death resulted in a few days. There was evidence that Joe was present aiding and abetting.

Much of the material evidence for the State was contradicted by that for the defendants. There was evidence that Mrs. Steele assaulted the defendants with a pistol and a bat, and that Joe in self-defense struck the deceased with the bat, and that Everett did not strike him at all. A minute account of the difficulty is not necessary to an understanding of the exceptions.

*Attorney-General Brummitt and Assistant Attorney-General Nash for the State.*

*R. O. Everett and Gattis & Gattis for defendants.*

ADAMS, J. The defendants assign for error the alleged failure of the trial judge to declare and explain the law of manslaughter. C. S., 564. We have insistently adhered to the doctrine that where a person indicted for a crime may under the bill be convicted of a lesser degree of the same crime and there is evidence tending to support the milder verdict, the person charged is entitled to have the law with respect to the lesser offense submitted to the jury under a correct charge; also that a statement of the contentions or of certain phases of the evidence accompanied with a mere enunciation of a legal principle is not a compliance with the statute. *S. v. Lee, ante,* 225; *Watson v. Tanning Co.,* 190 N. C., 840; *Wilson v. Wilson, ibid.,* 819; *S. v. Williams,* 185 N. C., 685.

As there was some evidence of manslaughter, it was incumbent on the judge in his instructions to the jury to declare and explain the law applicable to this offense. C. S., 564, 4639. It is apparent from the verdict that the jury accepted the State's contention as to the circumstances of the homicide, *i. e.,* that Everett Hardee struck the fatal blow and that Joe Hardee was present aiding and abetting. In the charge manslaughter was defined, the burden of showing to the satisfaction of the jury circumstances to reduce the homicide from murder in the second degree to manslaughter was properly placed upon the defendants, and then the specific instruction was given that if Everett Hardee saw the deceased approaching him with a drawn knife in a threatening attitude and being armed with a baseball bat himself, entered willingly into a fight with the deceased, both being armed with deadly weapons, and not in self-defense, and inflicted a blow with the bat which resulted in the death of the deceased, he would be guilty of manslaughter. It will

be noted that the instruction carefully distinguishes the willingness to fight in the beginning from fighting in self-defense, as explained in other parts of the charge, and states the law as declared in *S. v. Harrell,* 107 N. C., 944; *S. v. Crisp,* 170 N. C., 785; *S. v. Wentz,* 176 N. C., 745. The principle laid down in *S. v. Baldwin,* 155 N. C., 496, and *S. v. Pollard,* 168 N. C., 116, in reference to fighting willingly at any time up to the fatal moment has no application. The jury was told further that if Everett was guilty of manslaughter and Joe was present aiding and abetting when the assault was made he also would be guilty. Of these instructions the defendants cannot justly complain; there was no evidence to justify an application of the doctrine of cooling time. *S. v. Powell,* 168 N. C., 134; *S. v. Robertson,* 166 N. C., 356; *S. v. Jarrell,* 141 N. C., 722.

Three prayers for instructions were tendered by the defendants the substance of which, applicable to various phases of the evidence, was this: If Joe Hardee had reason to believe, and did believe, that it was the purpose of the deceased to take his life or to inflict great bodily harm he had a right to protect himself and secure his own safety, and if in doing so he killed the deceased with a baseball bat he would not be guilty of any crime. His Honor gave the several prayers, but modified them by adding as a proviso that the defendant did not enter into the fight willingly and did not use more force than appeared necessary to repel the assault. The prayer as tendered might well have been refused, and the further instructions certainly deprived the defendants of no substantial right. To avail himself of the plea of self-defense the defendant must show that he is himself without fault. *S. v. Crisp, supra; S. v. Kennedy,* 169 N. C., 326; *S. v. Robertson, supra; S. v. Hough,* 138 N. C., 663; *S. v. Blevins,* 138 N. C., 669; *S. v. Brittain,* 89 N. C., 481.

The exception chiefly relied on is based upon the following occurrence: "The court concluded his charge to the jury about 10:30 at night; and while the jury were retiring, or just after they had retired to the jury room to consider their verdict, one of the counsel for the prisoners called the court's attention to the use of the expression, 'by the greater weight of the evidence' in that part of the court's charge embraced in defendant's Exception No. 1. Whereupon, the trial judge thanked counsel for calling attention to the error and stated that he would call the jury back and correct it. Counsel for defendants then said it was not necessary to call the jury back and make the correction because they considered the use of the language set out above merely 'a slip of the tongue,' and that the court had charged in all the rest of the charge the correct rule that the jury would not be misled by the inadvertent use of the words, 'by the greater weight of the evidence,' in-

stead of the usual formula, 'beyond a reasonable doubt.' The presiding judge, however, stated that he thought it best to correct the error and would do so before the jurors began their deliberations; and as counsel for defendants and the State did not wish to have the jury recalled to the box, he invited them to accompany him to the door of the jury room where, in their hearing, he would make the necessary correction. Counsel for both State and the defendants, thereupon said that they did not care to go, and advised the presiding judge that they had no objection to his going to the door of the jury room and correcting the error without recalling the jury to the courtroom. All this took place in the courtroom immediately upon the retirement of the jury, and in the presence and hearing of the prisoners and their counsel."

The judge then went to the door of the jury room and told the jury to disregard the instruction that "they should be satisfied from the evidence and by its greater weight," and then gave the definite instruction, "Before you can convict of murder in the first degree you must be satisfied from the evidence beyond a reasonable doubt that the blow was struck with deliberation and premeditation."

The record proceeds: "This instruction was given by the judge, while standing in the open door of the jury room. This room does not open directly into the courtroom, but it is reached from the courtroom by a door that leads into a hallway, and this hallway at one end leads to the judge's chamber, and at the other into the jury room. The instructions were not given in the presence of prisoners or their counsel, but within a few steps of them as they sat within the bar, and they, by walking across the bar to the door leading into the hallway above referred to could have heard, if they had desired to do so."

The defendants now insist that they could not waive their presence and that it was the duty of the court to see that they were present at every stage of the trial. There are authorities to the effect that the absence of a prisoner during the course of his trial will vitiate his conviction of a capital felony. *S. v. Blackwelder,* 61 N. C., 38; *S. v. Dry,* 152 N. C., 813. See, also, *S. v. Matthews,* 191 N. C., 379. "The rule that he must be present in capital felonies is in *favorem vitœ.* It is founded in the tenderness and care of the law for human life and not in fundamental right—certainly not in this State, as seems to be supposed by some persons." *Merrimon, J.,* in *S. v. Kelly,* 97 N. C., 404.

The rule has been enforced in cases in which the verdict was for the capital felony; it has never been enforced in this State in a case where the verdict was for a lesser degree of homicide and where the presiding judge at the request of the defendant corrected an admitted "slip of the

tongue" by giving an instruction plainly favorable to the defense. Nothing was done in the absence of the defendants to prejudice their rights. The corrected instruction, substituting "beyond a reasonable doubt" for "by the greater weight of the evidence" related entirely to murder in the first degree and of this crime the defendants were acquitted. If there was error it was cured by the verdict. Indeed, this exception was not taken at the time; its first appearance was when incorporated in the case on appeal. To grant a new trial on this exception would be the veriest technicality and an unwarranted extension of the constitutional privilege. The modern tendency is against technical objections which do not affect the merits of the case. We find

No error.