19 P.(2d) 189

## STATE v. COSTALES.

No. 3818.

Supreme Court of New Mexico.

Jan. 9, 1933.

Rehearing Denied Feb. 27, 1933.

Robert H. La Follette and Kenneth G. Speir, both of Albuquerque, for appellant.

E. K. Neumann, Atty. Gen., and Quincy D. Adams, Asst. Atty. Gen., for the State.

**HUDSPETH, J.**

The appellant, Albino Costales, hereinafter referred to as defendant, was convicted in the district court of Bernalillo county of the crime of assault with intent to kill, and, from the judgment and sentence to a term in the penitentiary, he appeals.

The following statement of the facts appears in appellant's brief:

"On the 19th day of November, 1931, Charlie N. Burgin was working as a stationary fireman in the powerhouse at the Santa Fé Shops in Albuquerque, New Mexico, and had been working at said shops for more than nine years, and was acquainted with the defendant, Albino Costales, who on said date was working at said shops at the planing mill as a fireman and out of each week said Albino Costales spent one day as an oiler in the main power plant. * * *

"About six-thirty in the evening, Charlie N. Burgin went around behind the boilers, got a box to sit on and ate his lunch. Shortly afterwards while sitting on the box and about fourteen inches from the window and preparing to smoke, he was shot in the shoulder, by a twenty-two calibre bullet, which came through a window of the power house, making a little round hole. At that time about half of Burgin's body was exposed to the outside."

A flash-light was found near the point from which the bullet was fired. The police force of Albuquerque rendered efficient service in detecting and preserving evidence of the crime, and arrested defendant. He at first denied that he had been near the scene of the crime, and stated that his rifle and flash-light were at his home, and made other false statements, but, after his rifle and flash-light were exhibited to him at the police station, he signed a statement, which follows:

"Albuquerque, N. M. Nov. 20th, 1931.

"The following statements are true to the best of my knowledge & belief & are made without duress & without being promised anything in return.

"I Albino Costales, age 43 of 503 E. Manuel, work at the planing mill at the Santa Fé Shop. On 11–19–31 I went to work at 4 P. M. & took my rifle with me in car. It had one cartridge in it. It is a 22 calibre Winchester pump rifle. About 7:00 P. M. I took my rifle & proceeded as described in attached diagram to the power house & while passing the East side of the power house I stumbled & the gun went off. I heard some one yell inside the power house & I got scared & went back. I hid the rifle on east side of the planing mill.

"This is the first time I have brought my rifle to the shops.

"I also lost my flashlight on east side of the power house.

"I was shown the flashlight at the Police Station.

"Albino D. Costales."

The seniority rule prevailed in the shops; that is, the oldest man in point of service had the right to the job. A steam line was being built from the main plant, where Burgin worked, to the planing mill, where defendant was employed as fireman, with the purpose of eliminating the steam plant in the planing mill. Defendant talked with various parties shortly before the crime was committed about his prospect of being laid off upon the completion of the steam line. Burgin was defendant's senior in point of service. It was the state's theory that defendant committed the crime in an effort to make a vacancy in order that he might retain a job in the shops. Defendant had been convicted of theft of a car about ten years previously.

■ The first point urged by defendant is that the court erred in overruling his motion to have Jesus Candelaria, an employee of the engineering department of the city of Albuquerque, excused from the jury for cause "on the grounds of pecuniary interest, real or imaginary, and of business relationship with one who had participated actively in the prosecution of said defendant, it appearing that the Police Department of said city had been active in the prosecution."

Under the rule prevailing in most jurisdictions, Candelaria was a qualified juror. Thompson v. Commonwealth, 88 Va. 45, 13 S. E. 304; State v. Lewis, 50 Nev. 212, 255 P. 1002; 35 C. J. 313. However, it is sufficient to say that it is not shown that an objectionable juror was forced upon the defendant by the ruling of the court. The juror was excused upon a peremptory challenge exercised by the defendant. Three jurors were selected after defendant had exhausted his challenges, but it is not shown that any one of them was objectionable. The rule is stated in State v. Bailey, 27 N. M. 145, 198 P. 529, 530, where the following quotation from Colbert v. Journal Pub. Co., 19 N. M. 156, 142 P. 146, appears: "It is our opinion that the better rule is that an erroneous overruling of a challenge for cause, even though the peremptory challenges are thereafter exhausted, will not war-

rant a reversal of the judgment unless it is further shown upon appeal that an objectionable juror was forced upon the challenging party and sat upon the jury after such party had exhausted his peremptory challenges."

The defendant maintains that the court erred in overruling the motion for a new trial because Gregorio Lopez served on the jury and was not able to understand or speak the English language except in its most elementary form, which facts were only discovered by defendant after the trial had been held without the aid of an interpreter and the verdict rendered. The learned counsel of the defendant does not maintain that ignorance of the English language is ground for the disqualification of a juror, but states that the juror deceived court and counsel on voir dire by representing that he understood English. He cites cases listed in annotation following State v. Pratt (114 Kan. 660, 220 P. 505) in 34 A. L. R. 189.

█ The juror is of the same blood as defendant; Spanish being the mother tongue of both. Nearly half of those possessing the qualifications of a juror in this state are of like origin. Provision is made by law for a Spanish-English interpreter for the district courts, and it is the uniform practice to use an interpreter whenever any member of the jury requests it, or states that he does not understand English sufficiently well to fully comprehend the proceedings. Defendant had a right to examine the juror. State v. Douthitt, 26 N. M. 532, 194 P. 879; Territory v. Lynch, 18 N. M. 15, 133 P. 405. It has been held, in cases involving statutory qualifications, that the defendant, by accepting the juror, waived his right to object after the verdict was rendered. Territory v. Baker, 4 N. M. (Gild.) 236, 13 P. 30; U. S. v. Folsom, 7 N. M. 532, 38 P. 70; U. S. v. Gomez, 7 N. M. 554, 37 P. 1101. The trial court, which has large discretion in the matter (People v. Loper, 159 Cal. 6, 112 P. 720, Ann. Cas. 1912B, 1193; annotation, 34 A. L. R. 194), was satisfied as to the qualifications of the juror.

█ In view of the frequency with which this question is raised and of the fact that the members of the bar fully realize that it is their duty to satisfy themselves as to the ability of the jurors to comprehend English before the services of an interpreter are dispensed with, we hold that the size of a juror's vocabulary, or the extent of his ability to understand English, are not proper subjects of inquiry after the verdict is rendered.

██ The next point urged by defendant is stated as follows: "It is reversible error for the trial court to refuse to admit in evidence a revolver of a defendant charged with assault with intent to kill, (by the use of a 22 calibre rifle), where the defendant had testified to the ownership of such a revolver, the same being offered as evidence of his choice of weapons, and for the purpose of proving the absence of an intent to kill."

The defendant had testified, without objection, that the pistol was of "forty-five or thirty-eight" caliber, and that he had had the weapon in his house for three or four years. A defendant has a right to fortify his own

testimony on a point in issue in any way that he can. D'Ambra v. Rhinelander, 234 N. Y. 289, 137 N. E. 333. But this pistol was tendered in evidence to corroborate the defendant on a collateral issue, and in such cases it is largely within the discretion of the trial court to say what proof of collateral facts is or is not too remote. Fitch v. Martin, 84 Neb. 745, 122 N. W. 50; State v. Leeper, 199 Iowa, 432, 200 N. W. 732; Lock v. Chicago, B. & Q. R. Co., 281 Mo. 532, 219 S. W. 919; 22 C. J. 168; 10 R. C. L. p. 927.

"Evidence may be relevant, and yet its relevancy may be so slight and inconsequential that to receive it would be to distract attention that ought to be concentrated on what bears directly on vital points, and to confuse rather than to illuminate the case." State v. Wade, 96 Conn. 238, 113 A. 458, 462.

The proffered evidence was easily manufactured and of little probative force. In weighing the question of the choice of weapons between a .22 rifle and a pistol of large caliber, one arming himself to kill in the nighttime a man situated as Burgin was should have considered the facts of common knowledge that the discharge of the larger cartridge would result in a louder report, and that, except at very close range, the rifle is the more accurate weapon. The force of a bullet fired from a pistol of large caliber is, no doubt, greater than that of a bullet which was fired from the .22 rifle, but the rifle bullet had sufficient force, as appears from the record, to have killed Burgin if it had entered his body at the right point.

It was within the discretion of the trial court to determine whether or not the tendered exhibit was relevant, and its rejection was not reversible error.

The next point raised by defendant is as to the alleged prejudicial and erroneous statements made to the jury by the district attorney in his final argument.

The remarks were not incorporated into the record by way of bill of exceptions, and no objection was made at the time. The matter was called to the attention of the trial court for the first time in the motion for a new trial. Under the rule in this jurisdiction, objections must be made to the improper argument, and a request made to take it from the consideration of the jury. State v. Sedillo, 24 N. M. 549, 174 P. 985; State v. Vaisa, 28 N. M. 414, 213 P. 1038; State v. Balles, 24 N. M. 16, 172 P. 196; State v. Hawkins, 25 N. M. 514, 184 P. 977; Davis & Carruth v. Valley Mercantile & Banking Co., 33 N. M. 295, 265 P. 35.

A more serious question raised by defendant, in his motion for a new trial, is with reference to an oral communication sent to the jury by the presiding judge, through the medium of a bailiff, after they had retired to consider of their verdict, and while the court was in recess.

The court, in overruling the motion for a new trial in the memo. opinion, states: "I would like to mention the matter raised in the fourth paragraph of the motion. Of course no record appears of the matter and this, in itself, would be a sufficient answer to it, but

I think that the incident should be mentioned by the Court. Counsel for defendant was misinformed of the actual facts of the incident. The jury wanted to know whether they could write the recommendation for clemency on the form of verdict furnished them, and that was the extent of the instruction of the Court sent to the jury through the bailiff. The jury knew it had power to make the recommendation. No record was made of the incident or any exception taken, and the Court considered it quite harmless at the time. * * *"

The high character of the trial judge is an adequate guaranty against any conscious act of unfairness, but his suggestion that the absence of a record would be a sufficient answer to the point is potent in its persuasiveness of the soundness of the doctrine that the place for the judge is on the bench when he communicates with the jury, in order that there may be a record, and for the other good reasons pointed out in State v. Hunt, 26 N. M. 160, 189 P. 1111, 1115.

Under the doctrine of the Hunt Case, "that any communication under such circumstances is improper, and that the party in order to secure a setting aside of the verdict was not required to show prejudice, but only the fact that there was such unauthorized communication," this verdict would have to be set aside.

The rule has been greatly relaxed in modern times (16 C. J. 1165), and this is reflected in the decision of this court in State v. Clements, 31 N. M. 620, 249 P. 1003, 1008, where Mr. Justice Watson, speaking for the court, said: "We cannot admit, therefore, that it is the law of this state that the bare fact of an unauthorized and improper communication necessitates in all cases a new trial, even in capital felonies. When it appears that there has been such communication, the important question is whether prejudice has resulted. Such a communication certainly requires explanation, not only to secure the accused in his rights, but to maintain the court's authority. But if it satisfactorily appears that the communication was harmless and had no effect on the verdict, the rights of the accused do not require, and public interest does not permit, the granting of a new trial."

Other cases supporting the less strict doctrine are State v. Borchert, 68 Kan. 360, 74 P. 1108, 1109; People v. Rettich, 332 Ill. 49, 163 N. E. 367; Walter v. State, 29 Okl. Cr. 221, 233 P. 240; Wireman v. Com., 212 Ky. 420, 279 S. W. 633; Evans v. State, 165 Ark. 424, 264 S. W. 933; Lewis v. United States (C. C. A.) 295 F. 441 (certiorari denied in 265 U. S. 594, 44 S. Ct. 636, 68 L. Ed. 1197); Mahan v. State, 179 Ark. 189, 14 S.W.(2d) 1113; Durham v. State, 179 Ark. 507, 16 S.W.(2d) 991; State v. Henderson, 168 La. 487, 122 So. 591; People v. Kasem, 230 Mich. 278, 203 N. W. 135; State v. Newland (Mo. Sup.) 285 S. W. 400; State v. Parker, 321 Mo. 553, 12 S. W.(2d) 428; State v. Hardee, 192 N. C. 533, 135 S. E. 345; Faulk v. State, 106 Tex. Cr. R. 504, 293 S. W. 1110; Maxey v. State, 104 Tex. Cr. R. 661, 285 S. W. 617; Annotation 62 A. L. R. 1468.

It is apparent that the communication, complained of in this case, had no effect on the verdict. We believe that the doctrine of the Hunt Case should be modified to the extent that, where it affirmatively appears that the defendant was not prejudiced by the communication between court and jury, it will not be held to be reversible error.

The communication was not an instruction within the meaning of 1929 Comp. § 70-102, requiring the court to instruct the jury as to the law of the case and to commit its instructions to writing. Territory v. Donahue, 16 N. M. 17, 113 P. 601; 16 C. J. 1032.

A desire to retain a job is an unusual motive for an attempt to take human life, but there is substantial evidence of facts which exclude every other hypothesis except that of guilt.

Finding no reversible error in the record, the judgment must be affirmed, and it is so ordered.

WATSON, C. J., and SADLER and BICKLEY, JJ., concur.

ZINN, J., did not participate.