2006-NMSC-048

146 P.3d 305

**STATE of New Mexico, Plaintiff–Petitioner,**

v.

**Sonia JOJOLA, Defendant–Respondent.**

**No. 29,441.**

Supreme Court of New Mexico.

Oct. 18, 2006.

**662**

Patricia A. Madrid, Attorney General, Jacqueline R. Medina, Assistant Attorney General, Santa Fe, NM, for Petitioner.

John Bigelow, Chief Public Defender, Cynthia S. Sully, Assistant Appellate Defender, Santa Fe, NM, for Respondent.

## OPINION

CHÁVEZ, Justice.

{1} Defendant appeals from her conviction by a jury of child abuse resulting in death. Approximately five hours into deliberations, a juror approached the trial judge in chambers to complain that another juror had announced that she did not believe the State's expert testimony and that she would not change her mind about Defendant's innocence. The judge instructed the juror to "just report that you are hung" and to "do whatever [you] ha[ve] to do." Less than one hour later, Defendant was convicted by a unanimous jury. The Court of Appeals determined that the communication was improper. *State v. Jojola*, 2005-NMCA-119, ¶ 24, 138 N.M. 459, 122 P.3d 43. Concluding that the State failed to rebut the presumption of prejudice that attached to the improp-

er communication, the Court of Appeals reversed Defendant's conviction. *Id.* ¶ 25 The Court of Appeals, however, did not address Rule 5-610(D) NMRA, which prohibits ex parte communications between judge and jury. We affirm the Court of Appeals but write further to clarify our case law and to describe the history and rationale of Rule 5-610(D).

## I. BACKGROUND

{2} The State tried Defendant on four alternative theories of child abuse resulting in death or great bodily harm. After receiving their instructions, the jurors left the courtroom to deliberate at 11:40 a.m. The judge went back on the record at 4:20 p.m. to report a private conversation he had had with a juror in chambers. The transcript reflects the following dialogue between the judge, the two prosecutors, and the defense lawyer:

THE COURT: I just need to report there is a juror, and I believe she is the foreperson, I'm not sure, but a juror whom I believe to be the foreperson came to my office and she was complaining that one juror had committed perjury that she was the juror that had had a disagreement with that police officer about some ticket and that this juror—

[PROS. 1]: What police officer about a ticket?

THE COURT: That she doesn't believe the expert and that she is not going to change her mind and that they could be there for two months and she was not going to change her mind. She reported that to me and I told her, well, just report—you know, just report that you are hung and I told her I'll take it from there. So I guess—

[PROS 2]: Which juror approached you, Judge?

THE COURT: I believe she's—

[DEFENSE]: I guess it wouldn't matter if we know, does it?

THE COURT: I think for the record we need to know. I think she is the foreperson, Rochelle Smith or I think she is

Rochelle Smith, yeah. She is sitting right here.

. . . .

THE COURT: What she said was kind of in relation to what the last—what the note said so it's a continuation of that and I'm trying to summarize what she told me. But I told her to continue and do whatever she had to do and just report—just report to me and I could handle it from there.

[PROS. 2]: Is she going to send a note out?

THE COURT: She said, well, I'll just indicate to you that we're hung.

THE COURT: What I'm going to do—what I propose to do is I will ask my usual questions and probably I may send them home and ask them to come back tomorrow.

[PROS. 2]: Okay. That would be our preference I think at this point, Judge.

THE COURT: We just received information from the bailiff indicating that the juror had said to disregard the previous situation, the previous information and they said—and they sent out a note indicating we need additional time after 5:00 p.m. Thank you . . . .

[PROS. 2]: Do we want to let them continue just to deliberate?

THE COURT: We don't have a choice . . . .

[PROS 2]: We can tell them to go home at 5:00, Judge.

THE COURT: No, they're asking to stay beyond 5:00. I cannot tell them to go home.

[PROS 2]: Sure you can. You can do anything. You are the judge.

(Note: Bench conference concluded.)

Shortly thereafter, the jury returned a verdict of guilty of all four alternative counts of child abuse resulting in death or great bodily harm. The record reflects that the trial court went into recess at 5:16 p.m.

## II. THE STATE MUST OVERCOME THE PRESUMPTION OF PREJUDICE THAT ARISES WHEN A JUDGE HAS AN EX PARTE COMMUNICATION WITH A JUROR ABOUT AN ISSUE RELATING TO THE CASE

{3} Established precedent and the New Mexico Rules of Criminal Procedure provide guidance in determining whether a judge's ex parte communication with a juror is acceptable in the first instance, and whether reversal is warranted on appeal. In 1981, Criminal Procedure Rule 43(d), later codified as Rule 5–610(D) NMRA, was promulgated "to clarify the procedure for communications between the judge and the jury, after the jury has retired to consider the verdict, without recalling the jury." NMSA 1978, Crim. P. Rule 43(d) committee commentary (Repl. Pamp.1985). At its inception, and at the time of Defendant's trial, the rule stated:

> Communications between the judge and the jury may be made in writing without recalling the jury after notice to the attorneys and an opportunity for objection. Unless requested by counsel for the defendant, communications not relating to issues of the case at trial may be made without recalling the defendant.

Rule 5–610(D) NMRA 2002. The rule made a distinction between communications "relating to issues of the case" and those not. Read in its entirety, the rule required all communications relating to issues of the case to be made in open court and in the presence of the defendant or, with the consent of the lawyers, in writing. Even if not related to issues of the case, the rule did not allow for oral communications between judge and juror after the jury had begun deliberations. Our precedent, which also recognizes this distinction as to the substance of the communication, determines the consequences of violating this rule.

{4} As far back as 1884, our territorial court recognized in *Territory v. Lopez*, 3 N.M. 156, 2 P. 364 (1884) that a criminal defendant has a right to be present when the judge reconvenes the jury for instruction after deliberations have begun. In *Lopez*, we stated that "the proper practice would be to

send for the prisoner and his counsel, and as soon as they come into court to have the names of the jurors called, and if all are found to be present, the court will then receive any communication they have to make, and instruct them accordingly." *Id.* at 165, 2 P. at 368. In *State v. Hunt*, 26 N.M. 160, 170, 189 P. 1111, 1115 (1920), the *Lopez* rule was extended to "any communication between the judge and the jury respecting the case." In *Hunt*, we went as far as holding that there was an irrebuttable presumption of prejudice when there was any "unauthorized communication" between a judge and a juror. This bright-line rule was tempered in *State v. Costales*, 37 N.M. 115, 119–20, 19 P.2d 189, 191 (1933), where the trial judge had simply informed the jury as to whether they could write their recommendation for clemency on the verdict form. In *Costales*, we modified *Hunt* to hold that reversible error does not occur "where it affirmatively appears that the defendant was not prejudiced by the communication between court and jury." *Id.* at 121, 19 P.2d at 192. The genesis of the two-part analysis that guides us in determining whether a trial court committed reversible error in communicating with a juror is found in *State v. Beal*, 48 N.M. 84, 146 P.2d 175 (1944). In that case, after determining that there was an "improper communication" between the judge and the jury, we stated: "It now becomes necessary to determine whether this communication was prejudicial to the rights of appellant." *Id.* at 91, 146 P.2d at 179. However, we also recognized in *Beal* that a presumption of prejudice arises on the showing of an improper communication and that the State has the burden of overcoming this presumption. *Id.* at 91–92, 146 P.2d at 180. Finally, in *State v. Neely*, 112 N.M. 702, 711, 819 P.2d 249, 258 (1991), we clarified that "there are two prongs to the analysis: (1) a determination of error, and (2) if there is error, analysis of whether the state has rebutted the presumption of prejudice."

{5} As to whether *all* communications between judge and juror are "improper," thereby establishing the presumption of prejudice, we recognize that we have not always been clear. In *State v. Orona*, 92 N.M. 450, 456, 589 P.2d 1041, 1047 (1979) (emphasis added),

we said: "[I]t is improper for the trial court to have any communication with the jury *concerning the subject matter of the court proceedings*, except in open court and in the presence of the accused and his counsel." Just one year later, we cited *Orona* when making the overly-broad statements that "*any communication* by a trial court with the jury must be in open court in the presence of the accused and his counsel" and that "[w]hen communications occur in the absence of the accused, a presumption of prejudice arises." *State v. McCarter*, 93 N.M. 708, 711, 604 P.2d 1242, 1245 (1980) (emphasis added); *see also State v. Stephens*, 93 N.M. 458, 460, 601 P.2d 428, 430 (1979) (citing *Orona* in stating that "[i]t is highly improper for the trial court to have any communication with the jury except in open court and in the presence of the accused and his counsel"). *Neely*, however, clarified that not every ex parte communication between judge and juror is "improper." In *Neely*, a juror called the court asking to be excused because she was ill with chicken pox. Before dismissing the juror, the judge acted appropriately in making a record, discussing the problem with counsel for both parties, and ensuring that the defendant had waived his right to be present during the conference. We held there that when a communication concerns a "housekeeping matter" and the judge takes steps to consult with counsel and make a record of the conversation, the communication is not "improper" and, hence, no presumption of prejudice arises. *Neely*, 112 N.M. at 711, 819 P.2d at 258.

{6} From this historical analysis, it is clear that: (1) a presumption of prejudice which the State must dispel only arises from an "improper communication" between judge and juror; (2) an "improper communication" occurs when the substance of the ex parte communication "relates to the issues of the case"; and (3) a communication that does not "relate to the issues of the case" (that is, a "housekeeping matter") generally does not give rise to a presumption of prejudice. What is not clear, and is left to be decided in a more appropriate case, is whether a defendant may nonetheless make a showing of prejudice when the judge's ex parte commu-

nication with a juror is a "housekeeping matter." *See Costales,* 37 N.M. at 121, 19 P.2d at 192 (suggesting, in a case arguably involving a "housekeeping matter," that reversible error may be found where it affirmatively appears that the defendant was prejudiced).

{7} When Rule 5–610(D) was promulgated, it incorporated these principles from our case law. Although Rule 5–610(D) has been amended since Defendant's trial, its impetus and rationale remains the same. We discuss the current version of the rule in order to guide trial courts in the future. Effective September 1, 2005, the rule now states:

> The defendant shall be present during all communications between the court and the jury unless the defendant has signed a written waiver of the right to be personally present. All communications between the court and the jury must be in open court in the presence of the defendant and counsel for the parties unless the defendant waives on the record the right to be present or unless the communication involves only a ministerial matter. Unless requested by counsel for the defendant, communications between the court and the jury on a ministerial matter may be made in writing after notice to all counsel without recalling the defendant.

Rule 5–610(D) NMRA. The current rule still preserves the distinction between communications regarding issues relevant to the case and those not; moreover, it provides a safeguard to preserve a defendant's right to be present at all stages of trial. *See State v. Baca,* 1997–NMSC–059, ¶ 39, 124 N.M. 333, 950 P.2d 776 ("A judge violates a defendant's right to be present at every stage of his trial only if the judge's discussion with the juror concerns the subject matter of the case.") (emphasis omitted); *Hovey v. State,* 104 N.M. 667, 671–72, 726 P.2d 344, 348–49 (1986) (Walters, J., specially concurring) (arguing that New Mexico precedent has long recognized that a defendant's right to be present when a judge communicates with a juror on issues relating to the subject matter of the court proceedings "is a constitutional right that may not be waived by the attorney").

{8} The rule now provides that all communications between judge and jury relevant to the case occur in open court and in the presence of the defendant, unless presence is waived *in writing.* Not only does this insure that all communications relevant to the case occurring between judge and jury are captured by a stenographer or other recording device, it also avoids the problem of a judge having to decide solely on the basis of defense counsel's representations whether a defendant voluntarily, knowingly, and intelligently waived his right to be present. *See Hovey,* 104 N.M. at 670–71, 726 P.2d at 347–48. Regarding issues not relevant to the case (that is, "housekeeping" or "ministerial" matters) the rule does not allow for private, oral communications between a judge and an individual juror. Such communications must occur in open court and in the presence of the defendant if the defendant requests it. Even if the defendant does not request to be present, such communications are to occur only in writing. This insures that a proper record is made of the communication.

{9} Whether a communication is relevant to the case or a ministerial matter is a factual determination for the trial court. Suffice it to say that issues relating to a juror's personal comfort or responding to a simple request for an extra copy of the written jury instructions already provided to the jury are ministerial. *See, e.g., Ford v. State,* 690 N.W.2d 706, 712–13 (Minn.2005). In determining whether a communication is a ministerial matter, the best practice is for the trial court to confer with counsel for both sides and, if there is any doubt, to err on the side of concluding that it is not. *See id.* at 713 ("We caution, however, that any doubt regarding whether a communication relates to a housekeeping or substantive matter should be resolved in favor of defendant's presence."). At the same time, we emphasize that "[a] judge does not risk error every time he answers a phone. . . . [I]f a juror calls to say she is ill and the court cannot take steps to prevent the communication, there is not error *without more.*" *Neely,* 112 N.M. at 711, 819 P.2d at 258 (emphasis added). Even this type of brief encounter between judge and juror, though, should be made a part of the record. *See* Rule 5–610 NMRA committee commentary ("All commu-

nications between the judge and jury should be made a part of the record, whether made in the presence of defense counsel and defendant or not."). If a juror approaches a judge with a request to speak privately—about *any* matter—the proper procedure is for the judge to immediately stop any discussion and explain to the juror that his or her concerns may be raised in open court in the presence of the defendant, defense counsel, and the prosecution, or that the juror may place his or her concerns in writing to be read in open court in the presence of all parties.

{10} The primary concern we have with ex parte communications between judge and juror is not the competency or good faith of the trial judge, but rather the lack of a record and the potential harm that may arise from "having one juror serve as a conduit for communicating instructions to the whole panel." *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 461, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978); *see also Costales*, 37 N.M. at 120, 19 P.2d at 192 ("[T]he place for the judge is on the bench when he communicates with the jury, in order that there may be a record...."). As the United States Supreme Court stated in *U.S. Gypsum Co.*, "Any *ex parte* meeting or communication between the judge and the foreman of a deliberating jury is pregnant with possibilities for error." 438 U.S. at 460, 98 S.Ct. 2864. The Court offered at least two reasons why private communications with a juror may present problems, even for experienced judges:

First, it is difficult to contain, much less to anticipate, the direction the conversation will take at such a meeting. Unexpected questions or comments can generate unintended and misleading impressions of the judge's subjective personal views which have no place in his instruction to the jury-all the more so when counsel are not present to challenge the statements. Second, any occasion which leads to communication with the whole jury panel through one juror inevitably risks innocent misstatements of the law and misinterpretations despite the undisputed good faith of the participants.

*Id.* at 460–61, 98 S.Ct. 2864.

{11} In the present case, the only record of the conversation that we have is what the judge offered to the parties after the conversation had already taken place. While we have no reason to doubt the accuracy of the judge's report, we are left to speculate about how the juror interpreted the judge's comments and gestures and about what the juror reported to the rest of the jury back in the jury room. The juror may have interpreted the judge's statement to "do whatever [you have] to do" as an ultimatum to reach a verdict and may have relayed such an ultimatum to the rest of the jury. If so, the juror, inadvertently for sure, might have done what the judge would never have done—issue a so-called "shotgun" instruction. The use note for this instruction provides: "No instruction on this subject shall be given." UJI 14–6030 NMRA. Since at least 1980 "[t]his Court has specifically prohibited the use of such instructions, recognizing that they have been held to be coercive." *McCarter*, 93 N.M. at 711, 604 P.2d at 1245.

{12} Importantly, though, even if the juror did not issue a shotgun instruction to the rest of the jury, the private conversation related to the case because it "concerned the jury's deliberations" and "the inner workings of the jury room and the jurors' view of the evidence." *Jojola*, 2005–NMCA–119, ¶ 24, 138 N.M. 459, 122 P.3d 43. The communication did not occur in open court and in the presence of Defendant; therefore, Rule 5–610(D) was violated and the communication was improper. Having determined the communication was improper, a presumption of prejudice arises which the State must rebut. Here the State relies exclusively on its argument that the communication was not improper. We affirm the Court of Appeals's ruling that reversal is warranted because the State failed to rebut the presumption of prejudice that arose from the improper communication. *Id.* ¶ 25; *see also Orona*, 92 N.M. at 456, 589 P.2d at 1047 (noting that because "[t]he State made no attempt whatsoever to overcome" the presumption of prejudice, the Court had no choice but to "hold that the judge's communications with the jury were prejudicial and entitled defendant to a new trial").

## III. CONCLUSION

{13} Judges must follow the procedures laid out in Rule 5–610(D) in communicating with juries and individual jurors. The private conversation between the judge and juror in the present case amounted to an improper communication. Because the State did not rebut the presumption of prejudice that arises from an improper communication, we remand to the district court for a new trial.

{14} **IT IS SO ORDERED.**

WE CONCUR: RICHARD C. BOSSON, Chief Justice, PAMELA B. MINZNER, PATRICIO M. SERNA, and PETRA JIMENEZ MAES, Justices.