This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-37383**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**HECTOR CHAVEZ,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LUNA COUNTY**
**Jennifer E. Delaney, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
John Kloss, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Brian Parrish, Assistant Appellate Defender
Kimberly Chavez Cook, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**IVES, Judge.**

**{1}** Defendant appeals his conviction of aggravated battery (great bodily harm), contrary to NMSA 1978, Section 30-3-5(C) (1969). Defendant argues that (1) if the jury was functionally discharged, double jeopardy principles prohibited the judge from reassembling the jury to correct its verdict; (2) even if the jury was not functionally

discharged, the judge communicated with the jury improperly, requiring a mistrial; and (3) the evidence was insufficient to support the conviction. We affirm.

**BACKGROUND**

**{2}**     Defendant was charged with aggravated battery and tried before a jury. The jury received instructions on aggravated battery, which is a felony, and on battery, a lesser included misdemeanor. After the jury concluded its deliberations, it returned to the courtroom and read its verdict: Defendant was guilty of battery. The parties declined the district court's invitation to poll the jury. The district court discharged the jury and specifically noted they were relieved of their previous instructions to not talk about the case with others or use any social media.

**{3}**     Immediately after the jury left the courtroom, the judge called a short recess so she could release the jury and inquire about their service. Within one minute and twenty seconds, the judge returned to the courtroom and announced that a juror indicated the foreman signed the wrong verdict form and that the jury had unanimously agreed Defendant was guilty of aggravated battery, rather than battery. The jury returned to the courtroom, and the judge asked the foreman to state the unanimous verdict the jury reached. The foreman stated "the unanimous verdict that we chose was aggravated battery." The court then polled each of the jurors, asking, "Is guilty of aggravated battery with great bodily harm the verdict that you agreed to?" Every juror responded affirmatively.

**{4}**     The district court allowed the parties to submit briefing about what the proper outcome of the trial should be. After holding a short hearing, the district court ruled that the jury's failure to sign the correct form did not merit a mistrial. The district court found that the jury remained "within the control of the court and that there were no intervening forces that in any way tainted the jury prior to them coming back in and announcing their verdict, the corrected verdict of the aggravated battery." Thus, the district court did not disturb Defendant's aggravated battery conviction. Defendant appeals.

**DISCUSSION**

**I.      Double Jeopardy Principles Do Not Require Reversal**

**{5}**     Defendant argues that the jury was discharged and that its reassembly to correct its verdict violated double jeopardy principles. We disagree.

**{6}**     In general, we review double jeopardy claims de novo, but "where factual issues are intertwined with the double jeopardy analysis, we review the trial court's fact determinations under a deferential substantial evidence standard of review." *State v. Rodriguez*, 2006-NMSC-018, ¶ 3, 139 N.M. 450, 134 P.3d 737. To determine if a jury was discharged, such that it could not be reassembled to correct the mistake in the verdict, we take a "functional approach." *Id.* ¶ 5. "[A] verbal discharge or dismissal of the jury does not render the jury discharged for purposes of subsequent reassembly to

correct or amend a verdict." *Id.* Rather, our Supreme Court has "considered two issues: (1) whether the jury was separated from the presence and control of the trial court; and (2) whether there was a possibility of outside contacts or influence on the jury." *Id.* The second prong also requires consideration of "whether the record reflects that one or more jurors entered an area occupied by the general public." *Id.* If a juror has left the presence and control of the court and entered into an area of the general public, prejudice may be presumed, but our Supreme Court has "decline[d] to presume prejudice when the judge is able to articulate a finding that the jury did not leave the court's presence and control and remained intact." *Id.* ¶ 7. Furthermore, "because [court officials] are officers of the court, [appellate courts] decline to presume that court officials have contaminated a juror or the jury[.]" *Id.*

{7}     Under this functional approach, the verbal discharge of the jury in Defendant's case is not dispositive. *See id.* ¶ 5. As to the first prong of the *Rodriguez* test, the record shows the jury did not leave the presence and control of the court. Indeed, the district court found that the "jury remained under the supervision of the bailiff in the deliberation room after they were initially discharged, for a few minutes." Substantial evidence supports this finding. Less than two minutes after the judge verbally discharged the jury, the judge announced on the record that she had been informed of an error in the verdict. The judge brought the jury back into the courtroom to correct the verdict; a total of seven minutes had elapsed between the verbal discharge of the jury and its return to the courtroom. Because the jury remained in the confines of the jury room and within the presence and control of the court, the first prong is satisfied.

{8}     Turning to the second prong, Defendant argues that the jury may have "entered an area occupied by the general public" because the court gave the jury permission to talk about the case with others and access social media. *See id.* ¶ 5. Defendant contends that instant access to social media is the "modern day equivalent of entering 'an area occupied by the general public' " and that the jury had access to the public through their cell phones. We need not theorize about whether a jury's exposure to social media should be treated the same as entry into an "area occupied by the general public" because the district court's findings and the record in this case require us to reject Defendant's speculative argument. Defendant has not identified any instance where a juror accessed social media or had other unauthorized contact that might have influenced the corrected verdict. And the district court found that "[n]o members of the jury ever entered an area occupied by the general public" and "[t]he only people coming in contact with the jurors after initial discharge were [c]ourt officials, who are not presumed to have contaminated jurors." *See id.* ¶ 7 (stating that "we decline to presume prejudice when the judge is able to articulate a finding that the jury did not leave the court's presence and control and remained intact"). Even assuming for the sake of discussion that one or more jurors accessed social media, we find it implausible that during the seven minutes between when the jury was discharged and when they returned to the courtroom, the jury was so influenced by social media that the entire jury agreed to change its aggravated battery verdict to guilty.

**{9}** We hold that the jury was not discharged and that double jeopardy principles did not prohibit the district court from reassembling the jury to correct its verdict.

## II. The Judge's Communication With the Jury Does Not Require Reversal

**{10}** We also reject Defendant's alternative argument that if the jury was not functionally dismissed, then the conversation the judge had with the jury was an improper communication that should have resulted in a mistrial. "We review a trial court's denial of a motion for mistrial under an abuse of discretion standard." *State v. Gallegos*, 2009-NMSC-017, ¶ 21, 146 N.M. 88, 206 P.3d 993 (internal quotation marks and citation omitted). "An abuse of discretion exists when the trial court acted in an obviously erroneous, arbitrary, or unwarranted manner." *Id.* (alteration, internal quotation marks, and citation omitted). An improper communication arises when "the substance of the ex parte communication relates to the issues of the case." *State v. Jojola*, 2006-NMSC-048, ¶ 6, 140 N.M. 660, 146 P.3d 305 (internal quotation marks omitted). Conversely, "a communication that does not relate to the issue of the case (that is, a housekeeping matter) generally does not give rise to a presumption of prejudice." *Id.* (internal quotation marks omitted). Assuming without deciding that the communication in Defendant's case pertained to the issues in the case, we conclude that the evidence rebuts the presumption of prejudice. The communication between the judge and the jury occurred after the jury had completed its deliberations and after it had delivered its verdict. Before the judge left the courtroom to speak with the jury, the jury had already recognized its own error and had already asked the bailiff to retrieve the unsigned verdict forms. We therefore conclude that the conversation between the judge and jury could not have been prejudicial to Defendant and that the district court did not abuse its discretion by refusing to grant a mistrial.

## III. The Evidence Suffices to Sustain Defendant's Conviction

**{11}** Defendant argues that the evidence is insufficient to convict him of aggravated battery with great bodily harm. We disagree.

**{12}** "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Cabezuela*, 2015-NMSC-016, ¶ 14, 350 P.3d 1145 (internal quotation marks and citation omitted). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Largo*, 2012-NMSC-015, ¶ 30, 278 P.3d 532 (internal quotation marks and citation omitted). Our review employs a two-step process in which we first "view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. We then consider "whether the evidence, so viewed, supports the verdict beyond a reasonable doubt." *State v. Garcia*, 2016-NMSC-034, ¶ 24, 384 P.3d 1076. "We do not reweigh the evidence or substitute our judgment for that of the fact finder as long as there is sufficient evidence to support the verdict." *State v. Gipson*, 2009-NMCA-053, ¶

4, 146 N.M. 202, 207 P.3d 1179. "The jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 (alterations, internal quotation marks, and citation omitted).

**{13}** To obtain a conviction for aggravated battery with great bodily harm, the State was required to prove beyond a reasonable doubt that "[(1) D]efendant touched or applied force to [Victim] by repeatedly striking him; [(2) D]efendant intended to injure [Victim]; [(3) D]efendant caused great bodily harm to [Victim]; [and (4) t]his happened in New Mexico on or about the 18th day of December, 2016." *See* UJI 14-323 NMRA. The jury was also instructed that "[g]reat bodily harm means an injury to a person which creates a high probability of death or results in serious disfigurement or results in loss of any member or organ of the body or results in permanent or prolonged impairment of the use of any member or organ of the body." *See* UJI 14-131 NMRA. Defendant challenges the sufficiency of the evidence of the second and third elements: that Defendant intended to injure Victim and that Defendant caused great bodily harm. We begin by summarizing the relevant evidence and then address each challenged essential element.

**{14}** The evidence is undisputed that Defendant struck Victim first and did so at least two times. Defendant testified that he knocked Victim to the floor and was pulled away from Victim by his family members. One witness testified that Defendant hit Victim's face and head a number of times, so hard that the witness could hear the sound of the rings Defendant was wearing hitting Victim; that Victim was unable to fight back; and that when the witness and others tried to help Victim into a car to leave, Defendant began hitting Victim again.

**{15}** After Victim left to go to the hospital, his car ran off the road and got stuck in a ditch. The officer who responded to the call regarding the disabled vehicle testified that the vehicle had not sustained severe damage, none of its air bags had deployed, and the driver did not appear to have sustained any injuries. The officer found Victim in the passenger seat, unresponsive with wounds on his face and head. The officer determined from his investigation that Defendant's injuries were not consistent with the damage to the car. Victim's treating physician described Victim's injuries as those that occur from getting beaten up, a fall from a building, or a car accident. Victim testified that he was bleeding after the attack and did not suffer any injuries from the car accident. Victim was placed in a medically induced coma due to his injuries, and repair of his injuries required multiple surgeries.

**{16}** We conclude that sufficient evidence supports the jury's finding that Defendant intended to injure Victim. Defendant admitted that he hit Victim first, knocking him down, and that Defendant was pulled away from Victim by others. And it is undisputed that Defendant struck Victim at least two times. Indeed, as described above, one witness described Defendant striking Victim multiple times with great force in the head and face, rendering Victim unable to fight back. From this evidence the jury could have reasonably inferred that Defendant acted with the requisite intent.

**{17}** Sufficient evidence also supports the jury's finding that Defendant's battery of Victim caused him to suffer great bodily harm. Victim sustained very significant—indeed, life-threatening—head injuries. It is undisputed that Defendant hit Victim at least two times, and Defendant testified that he hit Victim in his face or head, knocking him down. Although Victim's treating physician did not draw a conclusion about exactly how Victim's injuries occurred, the officer who investigated the car accident testified that there was no damage to the interior of the car consistent with Victim's injuries, and Victim testified that he was bleeding before the car accident and that he suffered no injuries in the accident. Therefore, the jury could have reasonably inferred that Defendant caused Victim's injuries by striking him, and the jury could have reasonably rejected the theories that the car accident or blows from other attackers caused Victim to suffer great bodily harm. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829 ("Contrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject [the d]efendant's version of the facts.").

**{18}** Resolving all reasonable inferences in favor of the verdict, we find there was sufficient evidence to convict Defendant of aggravated battery with great bodily harm.

**CONCLUSION**

**{19}** We affirm.

**{20}  IT IS SO ORDERED.**

**ZACHARY A. IVES, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**KRISTINA BOGARDUS, Judge**