This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-36683**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**JAREK LOVESEE,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Jacqueline D. Flores, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
John Kloss, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
C. David Henderson, Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**IVES, Judge.**

**{1}** Defendant Jarek Lovesee was convicted, after a jury trial, of second-degree murder in violation of NMSA 1978, Section 30-2-1 (1994) and false imprisonment in violation of NMSA 1978, Section 30-4-3 (1963). On appeal, he argues that an undisclosed ex parte communication between the jury foreperson and the district court judge about the acceptable method of correcting a mistakenly completed verdict form requires reversal. We affirm.

**DISCUSSION**

**{2}** During deliberations, the jury foreperson mistakenly signed the not guilty verdict form for Defendant's murder charge. The foreperson determined to cross out the erroneous signature, initial the change, and then sign the guilty verdict form that reflected the jury's deliberation. The foreperson then informed the bailiff of the mistake and asked whether the solution of crossing out the signature on the wrong form was acceptable. The bailiff relayed this message to the district court judge, and then, at the judge's direction, told the foreperson that it was acceptable to have crossed out the erroneous signature. These exchanges occurred without informing any of the parties. The jury returned guilty verdicts for both second-degree murder and false imprisonment, and the district court polled the jury. Each juror affirmed that the guilty verdict forms accurately reflected his or her individual verdicts. At some point after the trial ended, Defendant's counsel discovered the not guilty form with the crossed-out signature in the online case records. Defendant then moved to set aside the guilty verdict for the murder charge based on the not guilty form and the undisclosed communications about that form between the jury, the bailiff, and the district court judge. After a hearing during which the bailiff testified regarding the interactions, the district court denied Defendant's motion to set aside the verdict.

**{3}** "The general rule is that we will not disturb a trial court's exercise of discretion in denying or granting a motion for a new trial unless there is a manifest abuse of discretion." *State v. Garcia*, 2005-NMSC-038, ¶ 7, 138 N.M. 659, 125 P.3d 638. "The question as to whether the evidence produced on the motion is such as to render a different result probable is one peculiarly addressed to the discretion of the trial judge." *State v. Romero*, 1938-NMSC-027, ¶ 15, 42 N.M. 364, 78 P.2d 1112 (internal quotation marks and citation omitted).

**{4}** Defendant argues that he has the right to be present for all communications between the court and the jury pursuant to Rule 5-610(D) NMRA and his constitutional rights to counsel, to be present, and to a public trial. Rule 5-610(D) provides:

> The defendant shall be present during all communications between the court and the jury unless the defendant has signed a written waiver of the right to be personally present. All communications between the court and the jury must be in open court in the presence of the defendant and counsel for the parties unless the defendant waives on the record the right to be present or unless the communication involves only a ministerial matter. Unless requested by counsel for the defendant, communications between the court and the jury on a ministerial matter may be made in writing after notice to all counsel without recalling the defendant.

"[N]ot every ex parte communication between judge and juror is 'improper.' " *State v. Jojola*, 2006-NMSC-048, ¶ 5, 140 N.M. 660, 146 P.3d 305. Rather, our case law has established that

(1) a presumption of prejudice which the [s]tate must dispel only arises from an "improper communication" between judge and juror; (2) an "improper communication" occurs when the substance of the ex parte communication "relates to the issues of the case"; and (3) a communication that does not "relate to the issues of the case" (that is, a "housekeeping matter") generally does not give rise to a presumption of prejudice.

*Id.* ¶ 6.

**{5}** We assume, without deciding, that the communication at issue is related to the issues of the case and therefore presume prejudice, as *Jojola* requires.[1] In determining whether the record rebuts this presumption, our Supreme Court's analysis in *Jojola* is instructive. In that case, a juror approached the district court judge in chambers during deliberations to complain that another juror had announced she was convinced of the defendant's innocence and would not change her mind. *Jojola*, 2006-NMSC-048, ¶ 1. The district court judge instructed the juror to "just report that you are hung and do whatever you have to do." *Id.* (alterations and internal quotation marks omitted). Shortly after this ex parte communication, the *Jojola* defendant was convicted by a unanimous jury. *Id.* Our Supreme Court explained that the primary concern with prejudice arising from such an ex parte communication is "the lack of a record and the potential harm that may arise from having one juror serve as a conduit for communicating instructions to the whole panel." *Id.* ¶ 10 (internal quotation marks and citation omitted). The Court noted that such communications are troubling because courts are "left to speculate about how the juror interpreted the judge's comments and gestures and about what the juror reported to the rest of the jury back in the jury room." *Id.* ¶ 11. The Court thus determined that the defendant was prejudiced based on the improper communication and the fact that the state had made no argument at all to rebut the presumption of prejudice. *Id.* ¶¶ 11-12*.*

**{6}** Defendant contends that, in the present case, it is similarly impossible to rebut the presumption of prejudice. We disagree. In Defendant's case, the foreperson informed the bailiff that the foreperson had "signed the wrong verdict form" and asked whether crossing out the signature and initialing it was alright. The bailiff's testimony indicates that the bailiff and the district court judge did not know which charge the inadvertently signed verdict form pertained to. The district court's mere approval of the foreperson's proposed method of correcting a mistake—a mistake that the foreperson recognized, had already started to correct, and took the initiative to bring to the court's

---

1Defendant asserts that reversal should be automatic because the communication at issue resulted in structural error. However, Defendant cites no authority for the proposition that the type of communication at issue in this appeal rises to the level of structural error, and we therefore assume none exists. *In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329. Nor does Defendant otherwise adequately develop a structural error argument. We therefore decline to address this point on the merits. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 ("We will not review unclear arguments, or guess at what a party's arguments might be." (alteration, internal quotation marks, and citation omitted)). Accordingly, we limit our analysis to Defendant's argument that the communication triggers a presumption of prejudice that the State cannot rebut.

attention—could not have had any prejudicial impact. These facts distinguish Defendant's case from *Jojola*, in which the communication between the judge and the juror occurred in the midst of deliberations, when, according to the juror, the jury had not yet been able to agree on a verdict. *See* 2006-NMSC-048, ¶ 1. Here, by contrast, the jurors had already reached a verdict when the communication occurred. And the jury poll confirms that every member of the jury approved of the guilty verdict. At Defendant's request, immediately after the foreperson read the guilty verdict, the district court polled the jury, and each juror confirmed that the verdict form accurately reflected the verdict. *See State v. Holloway*, 1987-NMCA-090, ¶ 14, 106 N.M. 161, 740 P.2d 711 ("The object of a poll is to give each juror an opportunity, before the verdict is recorded, to declare in open court his [or her] assent to the verdict which the foreman has returned and thus to enable the court and parties to ascertain for a certainty that each of the jurors approves of the verdict as returned." (internal quotation marks and citation omitted)). The record supports the district court's determination that the guilty verdict was reliable.

**{7}** We hold that the district court did not abuse its discretion by denying Defendant's motion for a new trial.[2] *See Garcia*, 2005-NMSC-038, ¶ 7.

**CONCLUSION**

**{8}** We affirm.

**{9}** **IT IS SO ORDERED**.

**ZACHARY A. IVES, Judge**

**J. MILES HANISEE, Chief Judge**

**LINDA M. VANZI, Judge**

---

[2]We do not reach the merits of the remaining issues. Because the jury's guilty verdict stands, we need not decide whether the district court lacked jurisdiction to rule on Defendant's motion for a new trial. *See State v. Gallegos*, 2007-NMSC-007, ¶ 26, 141 N.M. 185, 152 P.3d 828 (holding that the appellate court will affirm the district court's decision if it is right for any reason, so long as it is not unfair to the appellant). And because we do not reverse Defendant's murder conviction, we need not address his argument that double jeopardy principles bar retrial.