The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

Opinion Number:

Filing Date: June 4, 2026

**NO. S-1-SC-40593**

**STATE OF NEW MEXICO,**

Plaintiff-Respondent,

v.

**JOSHUA SHANE FREEMAN,**

Defendant-Petitioner.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Daylene A. Marsh, District Judge**

Bennett J. Baur, Chief Public Defender
Caitlin C.M. Smith, Assistant Appellate Defender
Santa Fe, NM

for Petitioner

Raúl Torrez, Attorney General
Benjamin L. Lammons, Assistant Solicitor General
Santa Fe, NM

for Respondent

**OPINION**

**BACON, Justice.**

{1}     Defendant Joshua Freeman was convicted of criminal sexual penetration in the second degree (CSP II), contrary to NMSA 1978, Section 30-9-11(E)(1) (2009). Defendant appealed his conviction to the Court of Appeals, arguing the trial court violated his constitutional right to be present during communications between the trial court and the jury after deliberations had begun. *State v. Freeman*, A-1-CA-41422, mem. op. ¶ 3 (N.M. Ct. App. Sep. 9, 2024) (nonprecedential). The Court of Appeals held an improper communication with the jury occurred which resulted in a presumption of prejudice. *Id.* ¶¶ 6-8. However, the Court of Appeals also held the presumption of prejudice was overcome and affirmed Defendant's conviction. *Id.* ¶¶ 10-11.

{2}     Defendant then appealed to this Court. The parties strongly disagree whether the communications at issue—two questions from the jury, both of which resulted in the trial court directing the jury back to the provided instructions—are subject to exceptions to the right to be present under Rule 5-610(D) NMRA and Rule 5-612(D)(3) NMRA and, if not, whether the State made an affirmative showing that the improper communications between the trial court and jury had no effect on the jury's verdict.

{3}     We affirm Defendant's conviction.

**I.    BACKGROUND**

{4}     Defendant was charged with one count of CSP II. At the close of trial, the jury was instructed on CSP II in accordance with UJI 14-956A NMRA. During its deliberations, the jury sent two questions to the trial court by note. The first asked, "Is the charge criminal sexual penetration considered/comparable in the state of New Mexico to statuatory [*sic*] rape?" The second asked, "What is the laws [*sic*] definition of physical force?"

{5}     Defendant was not present for the discussion of either question or when answers were sent back to the jury. Defense counsel purported to waive Defendant's appearance in both instances.[1] Ultimately, the prosecution, defense counsel, and trial court agreed on the content of the trial court's response to the jury's questions which referred the jury back to the previously given instructions. Importantly, Defendant

---

[1]The State did not argue in the Court of Appeals and does not argue before this Court that Defendant's waiver through counsel was legitimate. Due to the nature of Defendant's claims, he appears to implicitly argue the waiver by counsel was not legitimate. The record is insufficient in this regard. However, it is clear the trial court did not take necessary steps "to ascertain that the waiver [was] made voluntarily, knowingly, and intelligently" by Defendant through counsel. *See Hovey v. State*, 1986-NMSC-069, ¶¶ 18-19, 104 N.M. 667, 726 P.2d 344 (explaining the trial court should at a minimum determine "whether defense counsel [is] waiving the right or whether defendant voluntarily was doing so through his attorney").

was present for settling the previously given instructions. In the first instance, the trial court responded "The elements of the offense are in jury instruction #4." The second response stated "The law governing this case are [*sic*] contained in the instructions you were given." Defendant was convicted.

{6}     Defendant appealed to the Court of Appeals, arguing his constitutional right to be present was violated. *Freeman*, A-1-CA-41422, mem. op. ¶ 3; *see also State v. Padilla*, 2002-NMSC-016, ¶ 11, 132 N.M. 247, 46 P.3d 1247 (identifying the Sixth Amendment and the Fourteenth Amendment to the United States Constitution and Article II, Section 14 of the New Mexico Constitution as various federal and state constitutional amendments provide for the right to be present). The Court of Appeals held the communications at issue do not fall under either the Rule 5-612(D)(3) conference or hearing exception (providing a defendant's presence is not required "when the proceeding involves only a conference or hearing upon a question of law") or the Rule 5-610(D) ministerial matter exception (providing that where communication between the court and the jury involves "only a ministerial matter," the defendant's presence is not required), and therefore, improper communications with the jury occurred which resulted in a presumption of prejudice. *Freeman*, A-1-CA-41422, mem. op. ¶¶ 6-8. However, it also concluded the presumption was

overcome. *Id.* ¶ 10. Consequently, the Court of Appeals affirmed Defendant's conviction. *Id.* ¶ 11.

{7}     Defendant now appeals the Court of Appeals' memorandum opinion arguing the Court erred in analyzing the State's rebuttal of the presumption of prejudice by relying on dicta in reaching its conclusion. The State argues the Court of Appeals erred in holding Defendant's presence was required to address the jury's questions and the Court of Appeals should have held the communications were proper under the exception in Rule 5-612(D)(3). Because the parties question the Court of Appeals' interpretation of the law, we review the matter de novo. *See Allen v. LeMaster*, 2012-NMSC-001, ¶ 11, 267 P.3d 806 ("[I]nterpretation of our Rules of Criminal Procedure is a question of law that we review de novo.").

## II.     DISCUSSION

{8}     Defendant contends, relying primarily on out-of-state authority, that a proper harmless error analysis requires the Court to consider the hypothetical impact Defendant's presence may have had. Defendant further argues that the Court of Appeals improperly relied on *State v. McClure*, 1980-NMCA-067, 94 N.M. 440, 612 P.2d 232, in its analysis of the State's rebuttal. Finally, Defendant argues, in holding that the State rebutted the presumption of prejudice by showing the improper

communications merely referred the jury back to its instructions, the Court of Appeals improperly shifted the burden to Defendant to show additional prejudice.

{9}    The State argues the Court of Appeals erred in holding the communications at issue did not fall under the exception to the presence requirement in Rule 5-612(D)(3). Further, the State argues the exceptions to Rules 5-610 and 5-612 must be read harmoniously, implying that if the communications fall under the Rule 5-612(D)(3) exception, then they also must be excepted under Rule 5-610(D). If the communications are exceptions under the rules, then no presumption of prejudice is triggered. *See* Rule 5-612 and Rule 5-610; *State v. Sloan*, 2019-NMSC-019, ¶¶ 25, 27, 29, 453 P.3d 401.

{10}    Given that the presumption of prejudice and harmless error analysis becomes unnecessary if the communications fall under an exception to the right to be present, we address those arguments first. Ultimately, we conclude the Court of Appeals did not err in determining the communications in this case fall outside the Rule 5-612(D)(3) exception nor did it err in holding the communications were not *ministerial* under the Rule 5-610(D) exception. Finally, we conclude that after the presumption of prejudice arose, the State met its burden in rebutting the presumption and thus the Court of Appeals was correct in affirming Defendant's convictions.

**A. The Communications Between the Trial Court and the Jury Do Not Fall Under the Rule 5-612(D)(3) Exception or the Rule 5-610(D) Exception, and Thus Defendant Had a Constitutional Right to Be Present**

{11} "There is no dispute that a criminal defendant charged with a felony has a constitutional right to be present and to have the assistance of an attorney at all critical stages of a trial." *Padilla*, 2002-NMSC-016, ¶ 11; *see also State v. Garcia*, 1980-NMSC-132, ¶ 15, 95 N.M. 246, 620 P.2d 1271 ("A defendant's right to be present at every stage of the trial is grounded in the Sixth Amendment to the United States Constitution and made applicable to the states through the Fourteenth Amendment." (citing *Pointer v. Texas*, 380 U.S. 400 (1965))).

{12} Generally, the defendant has the burden to show a particular stage of the criminal proceedings is "critical," thereby triggering the constitutional right to be present. *Sloan*, 2019-NMSC-019, ¶ 9 (internal quotation marks and citation omitted). However, "Rule 5-612 incorporates a defendant's constitutional right to be present at all critical stages of trial into the New Mexico Rules of Criminal Procedure by prescribing when New Mexico requires the defendant's presence . . . and perhaps most significant to this case, when New Mexico does not require the defendant's presence." *Sloan*, 2019-NMSC-019, ¶ 12; *see also* Rule 5-612. Notably, the rule identifies "all communications between the court and the trial jury" as proceedings requiring a defendant's presence. Rule 5-612(A).

{13} Rule 5-610 was approved to facilitate the Court of Appeals' holding in *State v. Lindwood*, which dealt specifically with communication between the court and the jury if the jury has been recalled. 1968-NMCA-063, 79 N.M. 439, 444 P.2d 766. *See* Rule 5-610 comm. cmt. (explaining it is "not prejudicial error for the court to recall the jury and give it an instruction previously overlooked after the charge had been given and arguments of counsel made"). However, that rule was later amended to add Paragraph D "to clarify the procedure for communications between the judge and the jury, after the jury has retired to consider the verdict, without recalling the jury." *See id.* (referencing *McClure*, 1980-NMCA-067, and other cases for support). Importantly, the amendment also codified a defendant's right to be present for communications between the trial court and the jury. *See* Rule 5-610(D).

{14} The State argues the Court of Appeals ignored judicial canons of construction in construing Rule 5-612 and that if construed properly the communications here should be considered questions of law that fall under the exception in Rule 5-612(D)(3). Further, the State argues had the Court of Appeals correctly determined the communications fell under the Rule 5-612(D)(3) conference or hearing exception, the Court of Appeals should have also harmoniously construed the Rule 5-610(D) ministerial exception, implying that an exception under one rule operates as an exception to the other.

{15}     We turn first to whether Defendant had a constitutional right to be present under Rule 5-612 and whether the communications at issue fall under the Rule 5-612(D)(3) conference or hearing exception, as argued by the State. After concluding the communications do not fall under that exception, we move on to consider Defendant's rights under Rule 5-610 and its relevant ministerial matter exception in Rule 5-610(D). Finally, we conclude both rules triggered Defendant's constitutional right to be present, neither exception is applicable to the communications at issue, and a presumption of prejudice arose.

**1.     The communications do not fall under the Rule 5-612(D)(3) "conference or hearing" exception**

{16}     The intent of Rule 5-612 "is to protect the rights of a defendant." *Padilla*, 2002-NMSC-016, ¶ 14. Rule 5-612(A) provides a nonexhaustive list of distinct and separate proceedings identified as critical stages of trial which therefore implicate a defendant's right to be present, notably including "the arraignment, *all hearings and conferences*, argument, the jury trial and *during all communications between the court and the trial jury*." (emphasis added); *see also Sloan*, 2019-NMSC-019, ¶ 12 (acknowledging "the breadth of Rule 5-612(A)"). The rule provides a path for defendants to waive the right, allows for the trial court to proceed when the defendant is voluntarily absent or sufficiently disruptive, and sets out three narrow exceptions to the right to be present. *See* Rule 5-612(B)-(D). At issue in this case is the Court

of Appeals' interpretation of the exception under Rule 5-612(D)(3) (hereinafter Subparagraph (D)(3)).

{17} Subparagraph (D)(3) states a "defendant need not be present . . . when the proceeding involves only a *conference or hearing* upon a question of law." Rule 5-612(D)(3) (emphasis added). The Court of Appeals was correct in asserting that Subparagraph (D)(3) has never been interpreted as applying to communications between the trial court and the jury. *Freeman*, A-1-CA-41422, mem. op. ¶ 7. In fact, the Subparagraph (D)(3) exception has been applied by this Court in only one limited circumstance. *See Sloan*, 2019-NMSC-019, ¶¶ 24-25 (explaining the exception applies to a defendant's "presence at [a] pretrial hearing to consider [the] qualifications of [a] blood spatter analyst").

{18} In *Sloan*, this Court contemplated the Subparagraph (D)(3) exception when a defendant claimed his right to be present was violated by his exclusion from a pretrial hearing considering qualifications of an expert witness. *Sloan*, 2019-NMSC-019, ¶ 24. Prior to determining whether a pretrial hearing to qualify an expert witness was contemplated by the Subparagraph (D)(3) exception, this Court first recognized that Rule 5-612(A) (hereinafter Paragraph (A)) requires that the defendant be present at "'all proceedings, including . . . all hearings and conferences.'" *Id.* (quoting Rule 5-612(A)). In doing so, the Court tied the Subparagraph (D)(3) exception to a

particular type of proceeding—a hearing or conference—as identified in Paragraph (A). The pretrial hearing considered in *Sloan* fell neatly under both Paragraph (A)'s identification of "all hearings or conferences" and Subparagraph (D)(3)'s identification of "a conference or hearing" that only concerned a question of law. Accordingly, the Court considered whether the pretrial hearing involved only a question of law in its analysis.

{19}     The proceedings in this case do not involve a "hearing or conference" as contemplated in *Sloan* or identified by Subparagraph (D)(3). The primary issue here is whether Defendant's right to be present during all communications between the trial court and jury was violated. Paragraph (A) identifies "all communications between the court and the trial jury" as an entirely separate item in its list of protected proceedings. The Subparagraph (D)(3) exception relates to a distinct item in the list of proceedings in Paragraph (A): a conference or hearing. This Court has never identified "all communications between the court and the trial jury" in Paragraph (A) as a conference or hearing, nor have we extended the Subparagraph (D)(3) exception to it. We decline to do so now.

{20}     Subparagraph (D)(3) does not identify "all communications between the court and the trial jury" as a type of proceeding in which a defendant does not need to be present. Moreover, we have only interpreted the Subparagraph (D)(3) exception in

the limited context of an isolated "conference or hearing." The type of "conference or hearing" contemplated in *Sloan* and applied to the Subparagraph (D)(3) exception is distinguishable from the ongoing dialogue between the trial court and the jury, which is often interrupted throughout the trial to consult with counsel for the parties. Rule 5-612(D)(3). While a question from the jury often presents a pure question of law, which the parties may weigh-in on, the judge's communication with the jury is potentially wrought with peril. First, juries place great emphasis on what a judge tells them, which in turn may affect how the jury moves on to weigh the evidence. Second, during deliberations the judge is the last one to communicate with the jury, warranting an important opportunity for the accused to shape what is communicated to the jury. Finally, a jury's questions and the trial court's responses may influence a defendant's last-minute decisions concerning plea offers or other tactical issues. If a defendant is not present for those communications, they may miss their opportunity to change course.

{21} Although it is codified in our Rules of Criminal Procedure, we must not lose sight that a defendant's presence is an enshrined personal right granted by both the United States Constitution and the New Mexico Constitution. *See Padilla*, 2002-NMSC-016, ¶ 11. Any winnowing away of that constitutional right should be done with the utmost caution and care. We conclude here the breadth of Paragraph (A)

and the overarching intent to protect the constitutional right of defendants to be present support a narrow reading of the Subparagraph (D)(3) exception and we decline to extend it to "all communications between the court and the trial jury" regardless of whether the jury's question is purely a question of law. Rule 5-612(A).

{22} We hold the communications at issue, the discussions regarding the appropriate responses, and the responses themselves do not fall under the Subparagraph (D)(3) "conference or hearing" exception.

**2.    The communications at issue also do not fall under the Rule 5-610(D) "ministerial matters" exception, and therefore Defendant's right to be present was violated**

{23} Regardless of the communications' status in relation to the Rule 5-612(D)(3) exception, they are also governed by Rule 5-610(D) (hereinafter Paragraph (D)). Paragraph (D) generally requires a defendant "be present during *all* communications between the court and the jury." (Emphasis added.) The rule goes on to allow a defendant to waive their right of personal presence through a signed written waiver. *See* Rule 5-610(D). The rule also requires "all communications between the [trial] court and the jury [to] be in open court in the presence of" counsel and the defendant. *Id.* For purposes of written communications, "in open court" is satisfied when "the defendant is present when the response is sent." *McClure*, 1980-NMCA-067, ¶ 3

(internal quotation marks and citation omitted). However, the "in open court" requirement does not apply to "ministerial matter[s]." Rule 5-610(D).

{24} Finally, Paragraph (D) allows communications on "ministerial matter[s]" to "be made in writing [with] notice to all counsel [and] without recalling the defendant," unless a defendant's counsel requests otherwise. Rule 5-610(D); *see also* Rule 5-610 comm. cmt. (explaining Rule 5-610(D) allows for "communications which do not relate to issues in the case . . . to be made without having the defendant present, provided the defendant's presence has not been requested by his attorney"); *State v. Jojola*, 2006-NMSC-048, ¶ 8, 140 N.M. 660, 146 P.3d 305 (explaining communications regarding issues not relevant to the case must be "in open court and in the presence of the defendant if the defendant [so] requests").

{25} A "ministerial matter" is defined in New Mexico jurisprudence. *See Jojola*, 2006-NMSC-048, ¶¶ 5-9 (using "issues not relevant," "housekeeping," and "ministerial matters" interchangeably); *State v. Aguilar*, 2019-NMSC-017, ¶ 40, 451 P.3d 550 (explaining communications "characterized as housekeeping or ministerial . . . do not give rise to a presumption of prejudice" (internal quotation marks and citation omitted)); *State v. Cortez*, 2007-NMCA-054, ¶¶ 11-14, 141 N.M. 623, 159 P.3d 1108 (distinguishing communications related to the subject matter of the case from communications related to ministerial matters). "Suffice it to say that issues

relating to a juror's personal comfort or responding to a simple request for an extra copy of the written jury instructions already provided to the jury are ministerial." *Jojola*, 2006-NMSC-048, ¶ 9.

{26} By contrast, this Court has found communications implicating the jury's deliberations necessarily concern the subject matter of the case and therefore are not ministerial. *See, e.g.*, *Aguilar*, 2019-NMSC-017, ¶ 43 (holding an "oral exchange between the trial judge and jury foreperson about the jury's return of verdict forms . . . was undoubtedly related to the case"); *see also Jojola*, 2006-NMSC-048, ¶ 12 (holding a "private conversation . . . concern[ing] the jury's deliberations" is related to the subject matter of the case (internal quotation marks and citation omitted)).

{27} Here, Defendant made no legitimate waiver, so the communications at issue must be excepted as "ministerial matter[s]" under Paragraph (D) to avoid triggering a presumption of prejudice. The Court of Appeals analyzed whether the communications in this case were "relevant to an issue at trial" or whether they were "merely 'ministerial' or 'housekeeping' matters." *Freeman*, A-1-CA-41422, mem. op. ¶ 6 (quoting *Aguilar*, 2019-NMSC-017, ¶ 40). We agree with the Court of Appeals' determination that the communications were not ministerial as they concerned the subject matter of the case.

{28} In the first communication, the jury asked the trial court to distinguish between CSP II—the charge they were tasked with considering—and statutory rape. In the second communication, the jury inquired about the legal definition of physical force. Presumably in considering the CSP II charge contained in Instruction No. 4, the jury came across the required element of "physical force or violence," which prompted the question. Questions concerning the charges and elements being considered by a deliberating jury undoubtedly concern the subject matter of the case and fall in line with this Court's jurisprudence under *Aguilar* and *Jojola*. Accordingly, the communications here do not fall under the "ministerial matter" exception to Paragraph (D).

{29} As a result, the communications between the trial court and the jury were improper as they cannot be excluded under Paragraph (D) or the exception in Subparagraph (D)(3). Thus, Defendant's right to be present was violated by his exclusion from the discussion of the communications and the eventual replies to the jury, giving rise to a rebuttable presumption of prejudice.

**B.      The Court of Appeals Was Correct in Holding the State Rebutted the Presumption of Prejudice and Therefore Was Correct in Affirming Defendant's Conviction**

{30} A presumption of prejudice arises from an "'improper communication'" between the trial court and the jury. *Jojola*, 2006-NMSC-048, ¶ 6. Having identified

the communications at issue here were improper, as they occurred outside of Defendant's presence and are not subject to any relevant exceptions, "the State bears the burden of rebutting that presumption by making an affirmative showing on the record that the communication did not affect the jury's verdict." *Hovey v. State*, 1986-NMSC-069, ¶ 12, 104 N.M. 667, 726 P.2d 344. "Given the severe limitations on asking jurors about their deliberations and thought processes, the burden of overcoming the presumption of prejudice is necessarily a difficult one." *Aguilar*, 2019-NMSC-017, ¶ 44 .

{31}    In the Court of Appeals, the State argued "the communications did not affect the jury's verdict because the [trial court's] responses merely directed the jury to the jury instructions already given." *Freeman*, A-1-CA-41422, mem. op. ¶ 8. The Court of Appeals agreed, quoting *McClure*, 1980-NMCA-067, ¶ 8, for the proposition that courts have recognized "the presumption of prejudice may be overcome where the improper communication to the jury was merely a restatement of an instruction already given." *Freeman*, A-1-CA-41422, mem. op. ¶ 8 (internal quotation marks omitted). To combat Defendant's claims he could have somehow influenced the responses given, the Court of Appeals also noted Uniform Jury Instructions are presumed to be correct and "there is no error in refusing an instruction defining a

word or term," particularly where a word or term has a commonly understood meaning. *Id.* ¶ 10 (internal quotation marks and citation omitted).

{32} In his appeal to this Court, Defendant identifies three primary errors in the Court of Appeals' analysis of the State's rebuttal: (1) the analysis failed to consider the impact Defendant's presence would have had, (2) the Court of Appeals improperly relied on *McClure* to hold the State made an affirmative showing, and (3) the Court of Appeals required Defendant to show additional prejudice. Although the State argues the Court of Appeals was correct in determining the presumption of prejudice was rebutted, it does not engage with Defendant's arguments.

{33} Below we discuss what constitutes an affirmative showing that improper communications did not affect the verdict in a particular case, the relevant principle of *McClure*, and the Court of Appeals' analysis of the relevant instructions as furthering the rebuttal of the presumption of prejudice. However, we first briefly address Defendant's assertion that to determine the likely impact of the error on the jury's verdict, we must consider his hypothetical influence had he been present during the improper communications.

{34} Defendant refers to *State v. Alvarez-Lopez*, 2004-NMSC-030, ¶ 32, 136 N.M. 309, 98 P.3d 699, for the proposition that "[t]o '[assess] the likely impact of the error on the jury's verdict' . . . when the error consists of a defendant's absence from the

courtroom, this Court must consider what impact his presence might have had." This is a gross misstatement of *Alvarez-Lopez*, which held "constitutional error cannot be deemed harmless simply because there is overwhelming evidence of the defendant's guilt;" further, the *Alvarez-Lopez* Court went on to emphasize a focus on the impact of the error on the verdict, rather than the evidence of guilt. *Alvarez-Lopez*, 2004-NMSC-030, ¶ 32. Moreover, our caselaw is clear that once a presumption of prejudice arises from an improper communication, New Mexico law requires the state to make an affirmative showing the communication did not affect the verdict, placing the emphasis not on the impact of a defendant's absence but on the impact of the communications themselves. *See, e.g.*, *State v. Costales*, 1933-NMSC-001, ¶ 21, 37 N.M. 115, 19 P.2d 189 (holding "if it satisfactorily appears that the communication was harmless and had no effect on the verdict, the rights of the accused do not require, and public interest does not permit, the granting of a new trial" (internal quotation marks and citation omitted)); *see also McClure*, 1980-NMCA-067, ¶ 6 (explaining to "overcome the presumption [of prejudice], the [s]tate must show that the communication did not affect the verdict"). Accordingly, Defendant's argument does not avail.

{35} We turn then to Defendant's remaining argument that the Court of Appeals erred in concluding the State rebutted the presumption of prejudice. The Court of

Appeals based its analysis on a single paragraph from *McClure*. *See Freeman*, A-1-CA-41422, mem. op. ¶ 8. The relevant paragraph of *McClure* notes other jurisdictions "have held that the presumption of prejudice may be overcome where the improper communication to the jury was merely a restatement of an instruction already given." *McClure*, 1980-NMCA-067, ¶ 8. The *McClure* Court went on to conclude the record before it indicated the improper communication was a new definitional instruction. *Id.* The *McClure* Court was implying that the new instruction precluded it from using the logic of other jurisdictions to hold the presumption was overcome, but this is not expressly stated and the analysis stops there.

{36} Defendant has characterized this paragraph of *McClure* as dicta and thus takes issue with the Court of Appeals' reliance on the case. The principle introduced in *McClure* has not been addressed by this Court. We do so now and hold a presumption of prejudice arising out of improper communications between the court and the jury may be affirmatively rebutted by showing the communication merely referred the jury to previously given instructions because a restatement of the instructions does not impact the verdict.

{37} We have extensive jurisprudence in which we conclude the state's attempts to rebut the presumption of prejudice were insufficient. *See, e.g., State v. Orona*, 1979-

NMSC-011, ¶ 36, 92 N.M. 450, 589 P.2d 1041 (holding "[t]he [s]tate made no attempt whatsoever to overcome [the] presumption"); *Hovey*, 1986-NMSC-069, ¶ 14 (concluding the state's argument that the responses were accurate did not demonstrate the jury's verdict was not affected); *McClure*, 1980-NMCA-067, ¶ 9 (holding there was no showing an additional definitional instruction was not prejudicial); *State v. Brugger*, 1972-NMCA-102, ¶¶ 5, 8, 84 N.M. 135, 500 P.2d 420 (explaining the state failed to establish the jury had arrived at its verdict prior to the improper communication).

{38}     As noted above, overcoming the presumption of prejudice in improper communication cases is difficult. *See Aguilar*, 2019-NMSC-017, ¶ 44. This is because of the "severe limitations on asking jurors about their deliberations and thought processes." *Id.*; *see, e.g.*, *State v. Mann*, 2002-NMSC-001, ¶ 18, 131 N.M. 459, 39 P.3d 124 ("[Rule 11-606(B) NMRA] prohibits a juror from testifying as to any matter or statement made during the course of deliberations or to the juror's mental processes."). As a result, the State's affirmative showing that an improper communication did not affect the verdict largely relies on the context provided by specific facts, including the timing, content, and record of the communication. *See, e.g.*, *Aguilar*, 2019-NMSC-017, ¶ 45 (explaining even if a judge recalled an improper oral communication perfectly, the Court would still be "left to speculate

about how the juror interpreted the judge's comments and gestures and about what the juror reported to the rest of the jury back in the jury room" (internal quotation marks and citation omitted)); *Brugger*, 1972-NMCA-102, ¶¶ 4, 8 (noting the timing of an improper communication and the jury reaching a verdict provides context for rebutting the presumption if the record supports it).

{39} For example, the context in *Aguilar* made the presumption of prejudice in that case nearly impossible to overcome. In *Aguilar*, the judge orally communicated with the jury foreperson. 2019-NMSC-017, ¶ 43. "The one clear message conveyed by the trial judge's comments was that the jury's executed verdicts in the case were wrong in some respect and should be reconsidered." *Id.* The improper communication took place not only outside of the defendant's presence but also without notifying counsel for either party. *Id.* ¶ 10. Finally, the communication was not disclosed until after the jury returned a new verdict and had been discharged. *Id.* ¶ 45.

{40} Off-record oral communications between the judge and a member of the jury are particularly egregious. *See Jojola*, 2006-NMSC-048, ¶ 8 (explaining Rule 5-610(D) "does not allow for private, oral communications between a judge and an individual juror," even when the communications merely relate to housekeeping matters that are not relevant to the case). Ex parte oral communications make it

difficult to truly know what has been said, how it has been said, how it has been interpreted, and what may have been shared with other jurors. *See Aguilar*, 2019-NMSC-017, ¶ 45.

{41} Moreover, the content of the judge's communication to the jury in *Aguilar* clearly signaled something was wrong with the jury's verdict and would have undoubtedly affected the reconsideration that followed without some evidence apart from the judge's testimony. *Id.* ¶ 43. Additionally, the communications at issue in *Aguilar* did not have the benefit of input from counsel nor were counsel able to corroborate the judge's recollection of the exchange. *Id.* ¶¶ 10, 45. Further, the delay in revealing the improper communication made it impossible to poll jurors or otherwise correct the trial court's mistake. *Id.* ¶¶ 45-46.

{42} By contrast, the type of improper communications considered in *McClure*—that is, the restatement of previously given jury instructions—eliminates much of the speculation about the nature of the improper communications and their impact. It would be difficult for a restatement of the jury instructions in writing to be considered commentary on the jury's deliberation process, and here Defendant makes no argument to that effect. Additionally, defendants have the added ability to participate in the crafting and selection of jury instructions prior to the jury retiring to deliberate.

{43}     In this case, the improper communications and surrounding context make it relatively easy to discern what has been said, how it has been said, how it has been interpreted, and what was shared with other jurors. The content of the communications here were exclusively references to previously given instructions. Defendant was present for and had the ability to weigh in on the settling of the jury instructions and for the initial reading of the jury instructions. Referring the jury back to those very instructions did not add to or change any communication with the jury. The improper communications were on-record and in the presence of counsel, eliminating any speculation related to tone and gestures of oral communications and clearly establishing what was specifically relayed to the jury. Applying *McClure*, this context eases much of the difficulty in determining the potential effect on the jury's verdict. Accordingly, we adopt the relevant principle of *McClure*.

{44}     Additionally, "Uniform jury instructions are presumed to be correct." *State v. Ortega*, 2014-NMSC-017, ¶ 32, 327 P.3d 1076. Similarly, when a word or term has a common meaning, "there is no error in refusing an instruction defining the word or term." *State v. Munoz*, 2006-NMSC-005, ¶ 24, 139 N.M. 106, 129 P.3d 142 (internal quotation marks and citation omitted). The context of jury instructions and their selection process adds a layer of insurance that the trial court's responses are legally accurate and do not mislead the jury.

{45}     Defendant contends the Court of Appeals' analysis on the correctness of the jury instructions is tantamount to requiring him to show additional error, or as the Defendant has argued incorrect jury instructions. *See Freeman*, A-1-CA-41422, ¶¶ 9-10 (explaining we presume uniform jury instructions are correct and instructions are not required for commonly understood words or phrases). However, Defendant misinterprets the Court of Appeals' analysis. The Court of Appeals linked the correctness of the instructions to the State's showing the presumption of prejudice was overcome. *Freeman*, A-1-CA-41422, ¶ 10. In showing that the UJIs were correct and in showing "physical force and physical violence have commonly understood meanings," the State bolstered its argument that the improper communications had no effect on the jury's verdict. *Id.* (internal quotation marks omitted). Defendant certainly could have offered some additional error to undercut the State's showing if he so chose, but the Court of Appeals' analysis in no way suggests a showing of such additional error by Defendant is required.

{46}     Accordingly, under the relevant principle from *McClure*, we hold the presumption of prejudice was overcome because the improper communications to the jury were merely restatements of already given jury instructions, on the record, and in the presence of counsel, after Defendant was afforded the opportunity to participate in the crafting and selection of the jury instructions.

## III.  CONCLUSION

{47}  For the foregoing reasons, we conclude the communications at issue were improper, resulting in a presumption of prejudice. That presumption was overcome by the State's affirmative showing that the communications did not affect the jury's verdict. Accordingly, we affirm Defendant's conviction.

{48}  **IT IS SO ORDERED.**

_____

**C. SHANNON BACON, Justice**

**WE CONCUR:**

_____

**JULIE J. VARGAS, Chief Justice**

_____

**MICHAEL E. VIGIL, Justice**

_____

**DAVID K. THOMSON, Justice**

_____

**BRIANA H. ZAMORA, Justice**